## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | |
|---|---|
| **CRISINCIO FRANKS**<br>210 Bontressa Dr. #2<br>Louisville, KY 40206 | **Civil Action No.** 3:26-cv-00411-DJH |
| | **Judge:** Chief Judge David J. Hale |
| Plaintiff, | |
| -vs- | |
| **OFFICER PAUL FENWICK**<br>(In official and individual capacity)<br>Louisville Metro Police Department<br>601 W. Chestnut Street<br>Louisville, KY 40203 | |
| and, | |
| **SERGEANT LEWIS**<br>(In individual capacity)<br>First name presently unknown<br>Louisville Metro Police Department<br>601 W. Chestnut Street<br>Louisville, Kentucky 40203 | |
| and, | |
| **LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT**<br>d/b/a Louisville Metro Police Department<br>Jefferson County Attorney<br>200 S. Fifth Street, Suite 300N<br>Louisville, KY 40202 | |
| and, | |
| **LMPD OFFICER OR SUPERVISOR DEAN**<br>(In individual capacity)<br>First name presently unknown<br>Louisville Metro Police Department<br>601 W. Chestnut Street<br>Louisville, Kentucky 40203 | |

1

and,                                      :
                                          :
**JOHN DOE LMPD CHARGE-**                 :
**SELECTION OFFICER**                     :
(In individual capacity)                  :
Name presently unknown                    :
Louisville Metro Police Department        :
601 W. Chestnut Street                    :
Louisville, Kentucky 40203                :
                                          :
        Defendants.                       :

---

## FIRST AMENDED COMPLAINT WITH JURY DEMAND

---

Plaintiff Crisincio Franks states the following for his First Amended Complaint against Defendants Officer Paul Fenwick, Sergeant Lewis, LMPD Officer or Supervisor Dean, John Doe LMPD Charge-Selection Officer, and Louisville/Jefferson County Metro Government:

### INTRODUCTION

1.  This is a lawsuit brought under 42 U.S.C. Sections 1983 and 1988, the First Amendment, the Fourth Amendment, and Kentucky law.

2.  Officer Paul Fenwick used a traffic accident involving a motorized electric bicycle to arrest and prosecute Crisincio Franks for charges that did not fit the facts or the statutes cited. Fenwick charged Mr. Franks with no operator license under an autocycle statute, failure of owner to maintain insurance, no or expired registration plates, and first-degree criminal mischief.

3.  Fenwick did not make the arrest and vehicle-related charging decisions alone. Because Fenwick stated that he had never encountered the situation before, he sought guidance from other LMPD personnel.

4.   Fenwick consulted Sergeant Lewis, who in turn conferred with an LMPD employee identified as Dean concerning the threatened arrest and how the encounter should proceed.

5.   Fenwick later asked another LMPD officer or employee which charges he should file. After Fenwick described the device as an electric scooter or bicycle with a motor, the person advised Fenwick to charge Crisincio Franks with no operator's license, no insurance, and no registration.

6.   Fenwick accepted that advice and filed the same three vehicle-related charges. The arrest and prosecution therefore resulted from the participation of several LMPD personnel and at least one supervisor, not one officer acting alone.

7.   The problem is simple. Mr. Franks was not driving a car. He was not driving a truck. He was not driving an autocycle. He was riding a Rattan LM Ultra motorized electric bicycle, or a materially similar Rattan motorized electric bicycle. The Rattan LM Ultra is a bicycle-style device. It has two wheels, handlebars, a bicycle seat, pedals, a folding bicycle frame, a battery, and an electric hub motor. It is not an autocycle. It has no steering wheel. It has no three-wheel design. It has no side-by-side car-like seating. It has no safety-belt system. It is not the sort of vehicle described in KRS 189.288 or KRS 186.010. It is also not the sort of traditional registered motor vehicle that would give an officer probable cause to charge a rider for no registration plates or failure to maintain motor vehicle insurance merely because the rider did not produce vehicle registration after an accident.

3

8.  Fenwick did not have facts showing that Mr. Franks owned a covered motor vehicle. He did not have facts showing a vehicle that was required to have Kentucky registration plates. And he did not have facts showing intentional or wanton property damage. A person cannot be charged under statutes that do not apply. And the government cannot punish a person for speaking back to police by stacking charges that have no probable cause.

9.  Mr. Franks was jailed, held on a cash bond he could not afford, barred from driving, forced to live under a felony accusation, and prosecuted until the Commonwealth finally came to court and produced no evidence to support any charge. All charges were dismissed. This lawsuit follows.

**PARTIES**

10. Plaintiff Crisincio Franks is a resident of Kentucky.

11. Defendant Officer Paul Fenwick is a police officer employed by the Louisville Metro Police Department. Fenwick is sued in his individual and official capacities.

12. The Kentucky-law claims against Fenwick are asserted against him in his individual capacity only.

13. Defendant Louisville/Jefferson County Metro Government is the consolidated local government responsible for the Louisville Metro Police Department.

14. Louisville Metro is responsible for LMPD policies, customs, practices, training, supervision, discipline, and ratification of officer conduct.

15. At all relevant times, Defendants acted under color of state law.

16. Sergeant Lewis

    a. Defendant Sergeant Lewis is, upon information and belief, an LMPD supervisory officer employed by Louisville Metro. His first name is presently unknown because Louisville Metro redacted or omitted portions of the relevant communications and has not identified him by full name in the records available to Plaintiff.

    b. Fenwick stated during the incident that he had spoken with Sergeant Lewis and that Sergeant Lewis and Dean had conferred concerning Mr. Franks, the accident, Mr. Franks's refusal to provide information, and how the encounter should proceed.

    c. Fenwick represented that Lewis and Dean believed another officer should be present when Fenwick told Mr. Franks that he must provide the requested information or go to jail.

    d. Sergeant Lewis is sued in his individual capacity.

17. LMPD Officer or Supervisor Dean

    a. Defendant Dean is, upon information and belief, an LMPD officer, supervisor, or employee who participated in the consultation concerning Mr. Franks's detention and threatened arrest. Dean's first name and precise rank are presently unknown because those facts are maintained by Louisville Metro and were not disclosed in the records available to Plaintiff.

    b. Fenwick stated during the incident that Sergeant Lewis and Dean conferred concerning Mr. Franks and how the encounter should proceed.

c. Upon information and belief, Dean participated in the consultation concerning the plan to require Mr. Franks to provide information under threat of custodial arrest.

d. Dean is sued in his individual capacity.

18. John Doe LMPD Charge-Selection Officer

a. Defendant John Doe is the LMPD officer, supervisor, legal adviser, or other LMPD employee whom Fenwick telephoned and asked which charges he should file against Mr. Franks.

b. John Doe's identity is presently unknown because the produced recording does not disclose his name, and portions of the response were muted, omitted, or redacted.

c. Fenwick told John Doe that the device was electric, looked like a scooter or bicycle, had a small motor, and folded.

d. John Doe advised Fenwick to file charges for no operator's license, no insurance, and no registration.

e. Fenwick repeated those charges, accepted the advice, and filed the same charges against Mr. Franks.

f. John Doe is sued in his individual capacity.

6

**JURISDICTION AND VENUE**

19.   This Court has jurisdiction under 28 U.S.C. Sections 1331 and 1343 because this action is brought under federal law and 42 U.S.C. Section 1983.

20.   This Court has supplemental jurisdiction over the Kentucky-law claims under 28 U.S.C. Section 1367 because those claims arise from the same events as the federal claims.

21.   Venue is proper in this Court because the events complained of occurred in Jefferson County, Kentucky.

**STATEMENT OF FACTS**

22.   On or about August 13, 2025, Officer Fenwick responded to a traffic accident near Lexington Road and Bauer Avenue in Louisville, Kentucky.

23.   The incident was a traffic accident. It was not a burglary. It was not a theft. It was not an assault. It was not an intentional destruction of property.

24.   Mr. Franks was riding a Rattan LM Ultra motorized electric bicycle, or a materially similar Rattan motorized electric bicycle.

25.   The Rattan LM Ultra is sold as a folding electric bicycle.

26.    It looks like:



27. The Rattan LM Ultra has a bicycle-style frame, two wheels, handlebars, a bicycle-style seat, pedals, and an electric motor.

28. The Rattan LM Ultra is not a car, truck, autocycle, motorcycle, or other traditional registered motor vehicle.

29. The Rattan LM Ultra is not an autocycle because it does not have three wheels, a steering wheel, automotive pedals, side-by-side or tandem car-like seating, a three-point safety belt system, or a design speed exceeding forty miles per hour as certified by the manufacturer.

30. Any reasonable officer looking at the device would know that it was a motorized electric bicycle, not an autocycle.

31. Any reasonable officer looking at the device would know that the legal classification of the device was at least materially different from a car, truck, autocycle, or conventional registered motor vehicle.

32. Fenwick nevertheless issued four citations against Mr. Franks.

33. Fenwick charged Mr. Franks with no operator license under KRS 189.288(1).

34. KRS 189.288 concerns operation, insuring, titling, and registration of autocycles.

35. KRS 189.288 applies to an autocycle, and an autocycle is a specific three-wheeled vehicle with features not present here.

36. Mr. Franks did not operate an autocycle.

37. Fenwick did not identify facts showing that Mr. Franks operated an autocycle.

38. Fenwick did not identify a make, model, year, VIN, registration state, plate number, or vehicle color for any traditional registered motor vehicle allegedly operated by Mr. Franks.

39. Fenwick charged Mr. Franks with failure of owner to maintain required insurance or security under KRS 304.39-080.

40. That charge was an owner charge.

41. Fenwick did not have facts showing that Mr. Franks was the owner of any covered motor vehicle required to maintain security under that statute.

42. Fenwick did not have facts showing that the Rattan motorized electric bicycle was the kind of covered motor vehicle that required proof of insurance or security under KRS 304.39-080.

43. Fenwick charged Mr. Franks with no or expired registration plates under KRS 186.170.

44. KRS 186.170 concerns registration receipts, registration plates, and registration insignia for motor vehicles required to display them.

45. Fenwick did not have facts showing that the Rattan motorized electric bicycle was required to display Kentucky registration plates.

46. A person cannot violate a registration-plate statute when the device is not required to have registration plates in the first place.

47. At minimum, Fenwick had an obligation to know what statute he was charging and whether that statute applied to the device in front of him.

48. Instead, Fenwick treated a motorized electric bicycle as though it were a car, truck, autocycle, or traditional registered motor vehicle.

49. That was not a reasonable mistake. It was a misuse of criminal statutes.

50. Fenwick also charged Mr. Franks with criminal mischief in the first degree under KRS 512.020.

51. KRS 512.020 required facts showing that Mr. Franks, having no right or reasonable ground to believe he had such a right, intentionally or wantonly defaced, destroyed, or damaged property and caused pecuniary loss of $500.00 or more.

52. Fenwick did not have facts showing that Mr. Franks intentionally damaged property.

53. Fenwick did not have facts showing that Mr. Franks wantonly damaged property.

54. Fenwick did not have a reliable repair invoice, owner statement, estimate, photograph, or other competent evidence establishing the required pecuniary loss.

55. The citation claimed damage in excess of $1,000.00, but the criminal case ended without the Commonwealth producing evidence to support that claim.

56. At most, Fenwick was responding to an alleged traffic accident involving a motorized electric bicycle. That is not enough to charge a person with a felony.

57. Mr. Franks spoke during the encounter.

58. He denied wrongdoing.

59. He questioned the basis for Fenwick's demands.

60. He disputed Fenwick's effort to turn an accident involving a electric bicycle into a felony and motor-vehicle prosecution.

61. He refused to accept blame for offenses that did not fit the facts.

62. Mr. Franks did not use fighting words.

63. Mr. Franks did not threaten Fenwick or anyone else.

64. Fenwick did not like being challenged.

65. Instead of issuing only lawful citations supported by facts, Fenwick escalated the encounter by arresting Mr. Franks and causing a felony case to be filed.

66. Fenwick recognized that the situation was unfamiliar. During the investigation, he telephoned another person and said that he had a "quick question" about an "interesting situation" he had "literally never" encountered.

67. Fenwick described an accident involving a person riding what he called a scooter.

68. Fenwick said the device looked like a small scooter, was not registered, and had been operated on a public roadway.

69. Fenwick asked how far he could go in compelling Mr. Franks to provide identifying information, whether the device could be impounded, and what charge could be filed.

70. Portions of the response were muted, omitted, or redacted from the recording produced to Mr. Franks.

71. Fenwick later called another LMPD employee and stated that he had spoken with Sergeant Lewis.

72. Fenwick said Sergeant Lewis and an individual identified as Dean had conferred concerning the incident.

73. Fenwick said Lewis and Dean believed another officer should be present when Fenwick told Mr. Franks that he must provide his information or go to jail.

74. Fenwick acknowledged during that conversation that a person did not need a driver's license to operate a scooter.

75. Fenwick nevertheless asserted that operating a motorized scooter on a public roadway created an implied obligation to provide identifying information after an accident.

76. Fenwick later called another person and asked, "What charges do you think I ought to go with on this?"

77. Fenwick told the person that the device was motorized by an electric motor.

78. Fenwick described it as looking like a bicycle with a small motor and stated that it folded.

79. The person advised Fenwick to use charges for no operator's license, no insurance, and no registration.

80. Fenwick repeated the three proposed charges and stated that he would proceed with them.

81. Fenwick then filed the same three vehicle-related charges against Mr. Franks.

82. The complete communications, the identities and ranks of all participants, and the unredacted advice provided are maintained by Louisville Metro.

83. The charges were filed in Jefferson District Court as Case No. 25-F-006214.

84. Mr. Franks appeared for arraignment on August 14, 2025.

85. Mr. Franks pled not guilty.

86. The court set a cash bond of $2,500.00.

87. The court declared Mr. Franks ineligible for bail credit.

88. The court imposed a no-driving condition.

89. Because Mr. Franks could not afford the cash bond, he remained in custody.

90. On August 21, 2025, the case was redocketed, and Mr. Franks was released on his own recognizance.

91. On August 26, 2025, the court ordered the property room to release Mr. Franks's property, including his phone.

92. The preliminary hearing was eventually held on October 3, 2025.

93. The court dismissed all four charges without prejudice.

94. The case ended without a conviction.

95. Mr. Franks lost his liberty, lost time, suffered humiliation and emotional distress, lived under criminal accusations, and suffered financial harm and other damages.

96. Louisville Metro assigns LMPD patrol officers the recurring responsibility of investigating traffic accidents, classifying vehicles and transportation devices, selecting applicable statutes, determining whether registration, insurance, and operator-license requirements apply, determining whether the facts satisfy each element of an offense, and deciding whether to arrest a person or issue a citation.

97. Those responsibilities include encounters involving bicycles, electric bicycles, motorized bicycles, scooters, mopeds, motorcycles, autocycles, and other nontraditional transportation devices.

98. Kentucky law imposes different registration, insurance, licensing, and operating requirements depending on the legal classification of the device.

99. An incorrect classification predictably exposes a person to arrest, detention, bond conditions, and prosecution under statutes that do not apply.

100. LMPD officers also regularly investigate traffic accidents and must distinguish an accident from intentional or wanton property damage before initiating a criminal-mischief charge.

101. Louisville Metro therefore had an obvious need for policies, training, legal guidance, and supervisory procedures requiring officers to verify that the facts satisfied the elements of each selected charge.

102. That need included procedures requiring officers to verify: (a) the legal classification of the device; (b) whether registration, insurance, license-plate, ownership, or operator-license requirements applied; (c) whether probable cause separately supported each charge; (d) whether the facts established intentional or wanton

13

property damage; and (e) whether reliable evidence supported the claimed level of pecuniary loss.

103. The need for such procedures was not dependent on the particular model of electric bicycle involved here. It arose from the recurring duty of LMPD officers to identify applicable statutes and establish charge-specific probable cause before taking a person into custody.

104. Upon information and belief, Louisville Metro did not maintain or enforce an adequate procedure requiring officers or supervisors to verify statutory applicability and charge-specific probable cause before, or promptly after, a custodial arrest and the initiation of felony charges.

105. The precise contents of LMPD's policies, training, legal bulletins, supervisory-review procedures, and Officer Fenwick's training are maintained by Louisville Metro.

106. The deficiency was apparent in this incident. Fenwick charged Mr. Franks under an autocycle statute even though the device had two wheels, handlebars, pedals, a bicycle seat, and none of the defining physical characteristics of an autocycle.

107. Fenwick also charged registration and insurance offenses without identifying a make, model, year, vehicle identification number, registration state, license plate, or other facts showing that Mr. Franks possessed or owned a vehicle legally subject to those requirements.

108. Fenwick charged first-degree criminal mischief arising from a traffic accident without identifying facts establishing intentional or wanton conduct or reliable evidence establishing the required level of pecuniary loss.

14

109. These defects appeared from the physical device and the face of the charging materials.

110. A meaningful statutory-verification or supervisory-review procedure would have identified the defects before Mr. Franks was jailed or would have caused the unsupported charges to be promptly corrected.

111. Upon information and belief, LMPD maintained systems through which citations, arrest reports, incident reports, and felony charging materials were submitted, accepted, retained, reviewed, or returned for correction.

112. To the extent supervisory review occurred, the reviewing personnel accepted charging materials whose statutory deficiencies appeared from their face.

113. To the extent supervisory review did not occur, Louisville Metro permitted an officer to initiate a custodial arrest and felony case without meaningful review of statutory applicability or charge-specific probable cause.

114. The identity of any reviewing supervisor, the nature of the review performed, and the electronic approval or audit history are maintained by Louisville Metro and are not presently available to Mr. Franks.

115. Before August 13, 2025, Louisville Metro had received formal notice of concerns involving unsupported street-level stops, detentions, arrests, enforcement against persons who criticized police, inadequate supervisory review, and deficient officer-accountability systems.

116. That notice concerned the broader danger presented here: officers exercising arrest and charging authority during ordinary street encounters without adequate supervisory safeguards against unsupported or retaliatory enforcement.

117. Upon information and belief, Louisville Metro failed to implement or enforce adequate corrective measures requiring statutory verification, charge-specific probable cause, and meaningful supervisory review of the type of arrest and charging decisions involved here.

118. The absence or inadequacy of those safeguards permitted Fenwick's unsupported charges to become an arrest, a week of incarceration, restrictive bond conditions, and a criminal prosecution.

119. As a direct and proximate result of Defendants' conduct, Mr. Franks suffered damages.

120. Those damages include loss of liberty, emotional distress, humiliation, fear, inconvenience, loss of time, financial hardship, lost opportunities, reputational harm, and other damages proven by the evidence.

121. Fenwick acted intentionally, maliciously, recklessly, or with callous disregard for Mr. Franks's federally protected rights.

122. Mr. Franks is entitled to punitive damages against the individual Defendants whose conduct was motivated by evil intent or involved reckless or callous indifference to his protected rights.

123. Mr. Franks is entitled to attorney fees and costs under 42 U.S.C. Section 1988.

## STATEMENT OF CLAIMS

### Count I - First Amendment Retaliation - 42 U.S.C. Section 1983
### (Against Fenwick and Louisville Metro)

124. Mr. Franks restates all previous paragraphs.

125. The First Amendment protects a person's right to criticize police, question police demands, dispute accusations, deny wrongdoing, and object to government conduct.

126. Mr. Franks engaged in protected speech when he disputed the accusations, questioned the legal basis for Fenwick's demands, denied wrongdoing, and protested being treated as a criminal for an accident and for statutes that did not apply.

127. Fenwick took adverse action against Mr. Franks by arresting him, causing him to be jailed, charging him with a felony, and causing a criminal prosecution to be filed.

128. Mr. Franks's protected speech was a substantial or motivating factor in Fenwick's actions.

129. Fenwick would not have arrested, jailed, or charged Mr. Franks in the same way had Mr. Franks not spoken back and challenged the accusations.

130. Fenwick's actions would chill a person of ordinary firmness from continuing to speak, object, or challenge police conduct.

131. There was no probable cause for the charges Fenwick used against Mr. Franks.

132. In the alternative, this case falls within the recognized exception for retaliatory arrests because ordinary traffic accidents, registration disputes, insurance disputes, and alleged minor traffic violations are circumstances in which officers normally

17

exercise discretion not to make custodial arrests or felony charges absent protected speech.

133. Louisville Metro is liable for the First Amendment violation because the municipal deficiencies alleged in Count VI permitted officers to use discretionary arrest and charging authority without adequate review of whether enforcement was supported by charge-specific probable cause or motivated by a citizen's protected criticism of police. Defendants violated Mr. Franks's First Amendment rights.

134. Mr. Franks is entitled to compensatory damages, nominal damages, punitive damages against Fenwick, attorney fees, and costs.

**Count II - Fourth Amendment**
**Malicious Prosecution - 42 U.S.C. Section 1983**
**(Against Fenwick, John Doe, and Louisville Metro)**

135. Mr. Franks restates all previous paragraphs.

136. The Fourth Amendment protects people from being prosecuted and seized through criminal charges that lack probable cause.

137. Fenwick made, influenced, and participated in the decision to prosecute Mr. Franks.

138. Fenwick did so by issuing the citations, selecting the charges, causing a felony case to be opened, and causing Mr. Franks to be held under legal process.

139. Lewis and Dean participated in, advised, authorized, or approved the decision to use custodial arrest and initiate criminal proceedings against Mr. Franks.

140. John Doe directly participated in the charging decision by identifying the no-operator's-license, insurance, and registration charges Fenwick should file.

141. John Doe supplied that advice after being told that the device was electric and looked like a scooter or bicycle with a small motor.

142. Fenwick accepted the advice and filed the same charges identified during the consultation.

143. Fenwick made, influenced, and participated in the prosecution on all four charges.

144. The prosecution lacked probable cause.

145. The lack of probable cause is charge-specific.

146. Probable cause for one charge, even if it existed, would not give Fenwick the right to prosecute Mr. Franks for every other charge.

147. The first-degree criminal-mischief charge lacked probable cause because Fenwick had no facts showing intentional or wanton damage and no competent proof of the pecuniary loss required for first-degree criminal mischief.

148. The no-operator-license charge lacked probable cause because Fenwick cited an autocycle statute even though Mr. Franks was riding a motorized electric bicycle and not an autocycle.

149. The insurance charge lacked probable cause because Fenwick charged failure of owner to maintain insurance without facts showing that Mr. Franks owned a covered motor vehicle required to maintain that security.

150. The registration-plate charge lacked probable cause because Fenwick did not have facts showing that the Rattan motorized electric bicycle was required to display Kentucky registration plates.

151. The charges caused a seizure of Mr. Franks. He was arrested, jailed, held on a cash bond, denied bail credit, and restricted by bond conditions.

152. The criminal proceeding ended in Mr. Franks's favor when the court dismissed all charges without prejudice and the prosecution ended without a conviction.

153. Fenwick acted maliciously and without probable cause.

154. Louisville Metro is liable for the malicious prosecution because the municipal deficiencies alleged in Count VI permitted Fenwick to select and initiate multiple charges without a procedure requiring verification that each statute applied and that each charge was independently supported by probable cause. Defendants violated Mr. Franks's Fourth Amendment rights.

155. Mr. Franks is entitled to compensatory damages, nominal damages, punitive damages against the individual Defendants as permitted by law, attorney fees, and costs.

### Count III – Kentucky Common Law Malicious Prosecution
### (Against Fenwick and Lewis)

156. Mr. Franks restates all previous paragraphs.

157. Fenwick and Lewis initiated, continued, or procured the criminal proceeding against Mr. Franks.

158. Fenwick and Lewis acted without probable cause.

159. Fenwick and Lewis acted with malice because he used charges that did not fit the facts or statutes, and he did so for a purpose other than bringing an offender to justice.

160. The criminal case terminated in Mr. Franks's favor.

161. Mr. Franks suffered damages.

### Count IV - Fourth Amendment - False Arrest, False Imprisonment, and
### Unlawful Seizure - 42 U.S.C. Section 1983
### (Against Fenwick, Lewis, Dean, John Doe, and Louisville Metro)

162. Mr. Franks restates all previous paragraphs.

163. Fenwick arrested Mr. Franks and caused him to be jailed.

164. Fenwick lacked probable cause to arrest Mr. Franks.

20

165. No reasonable officer could believe that Mr. Franks could be arrested and jailed under statutes that did not fit the facts and for a felony property-damage charge unsupported by evidence of intent, wantonness, or felony-level loss.

166. No reasonable officer could believe that a Rattan motorized electric bicycle was an autocycle under Kentucky law.

167. No reasonable officer could believe that Mr. Franks could be arrested for failing to produce registration plates or insurance for a motorized electric bicycle without first determining that the device was legally required to have those things.

168. Kentucky law also favors citation instead of arrest for minor offenses when there are reasonable grounds to believe the person will appear.

169. Fenwick had no reasonable basis to believe that Mr. Franks would not appear in court.

170. Fenwick physically carried out the arrest.

171. Fenwick stated that Lewis and Dean participated in a consultation concerning the plan to require Mr. Franks to provide identifying information under threat of custodial arrest.

172. Upon information and belief, Lewis and Dean received material information concerning the traffic accident, Mr. Franks's refusal to provide identifying information, the threatened arrest, and the nature of the device involved.

173. John Doe participated directly by selecting charges that Fenwick then used as the asserted grounds for Mr. Franks's arrest.

174. Each individual Defendant set in motion, authorized, advised, approved, or participated in conduct that caused Mr. Franks to be seized without probable cause.

175. Louisville Metro is liable for the arrest and imprisonment because the municipal deficiencies alleged in Count VI permitted a custodial arrest based on charges that had not been meaningfully reviewed for statutory applicability, offense elements, or charge-specific probable cause. Defendants' arrest and imprisonment of Mr. Franks violated the Fourth Amendment.

176. Mr. Franks is entitled to damages for the arrest and detention up to the time he was held under legal process, and all other damages allowed by law.

### Count V - Kentucky Common Law False Arrest and False Imprisonment
### (Against Officer Fenwick Individually)

177. Mr. Franks restates all previous paragraphs.

178. Fenwick intentionally caused Mr. Franks to be confined.

179. The confinement was not privileged because Fenwick lacked probable cause and lacked legal authority to arrest Mr. Franks on the charges used.

180. Mr. Franks was aware of the confinement.

181. Mr. Franks suffered damages from the confinement.

### Count VI - Municipal Liability - 42 U.S.C. Section 1983
### (Against Louisville Metro)

182. Mr. Franks restates and incorporates the preceding paragraphs.

183. Louisville/Jefferson County Metro Government is the consolidated local government responsible for the Louisville Metro Police Department.

184. Louisville Metro establishes, adopts, maintains, implements, and enforces LMPD policies, customs, practices, training, legal guidance, supervision, report-review procedures, disciplinary systems, and officer-accountability procedures.

185. Louisville Metro delegates to LMPD patrol officers the authority to investigate accidents, classify vehicles and transportation devices, determine whether criminal and traffic statutes apply, select charges, determine probable cause, decide whether to arrest or issue a citation, prepare charging materials, and initiate criminal proceedings.

186. Those are recurring law-enforcement functions performed throughout Louisville.

187. LMPD officers regularly encounter cars, trucks, motorcycles, autocycles, mopeds, motor scooters, electric scooters, electric bicycles, motorized bicycles, bicycles equipped with motors, and other nontraditional transportation devices.

188. Kentucky law applies different registration, insurance, license-plate, ownership, operator-license, and operating requirements depending on the legal classification of the vehicle or device.

189. LMPD officers must therefore determine whether the particular device involved in an encounter falls within the statutes they intend to enforce.

190. LMPD officers also regularly investigate traffic accidents and property-damage complaints.

191. Those investigations require officers to distinguish accidental or negligent conduct from intentional or wanton damage before charging criminal mischief.

192. Those investigations also require officers to obtain a reliable factual basis for the amount of alleged pecuniary loss before selecting the degree of a criminal-mischief offense.

193. LMPD officers must further determine whether probable cause independently supports each charge arising from an encounter.

194. Probable cause for one possible offense does not establish probable cause for every additional charge an officer elects to file.

195. When officers perform those recurring functions incorrectly, the foreseeable consequences include custodial arrest, incarceration, cash bond, restrictive release conditions, prosecution, and loss of liberty under statutes that do not apply.

196. Louisville Metro therefore had an obvious need for policies, training, legal guidance, supervision, and review procedures requiring officers to verify statutory applicability and charge-specific probable cause before depriving a person of liberty.

197. The charging decisions were not made by Fenwick in isolation.

198. During the investigation, Fenwick telephoned another person and described the situation as one he had "literally never" encountered before.

199. Fenwick described an accident involving a person riding what Fenwick called a scooter.

200. Fenwick stated that the device looked like a small scooter and was not registered.

201. Fenwick asked how far he could go in compelling Mr. Franks to provide identifying information, whether the device could be impounded, and what charge could be filed.

202. Portions of the response to Fenwick's questions were muted, omitted, or redacted from the version of the recording produced in response to the public-records request.

203. Fenwick later telephoned another LMPD employee and stated that he had spoken with Sergeant Lewis.

204. Fenwick stated that Sergeant Lewis and a person identified as Dean had conferred about the incident.

205. Fenwick further stated that Lewis and Dean believed another officer should be present when Fenwick told Mr. Franks that he either had to provide his information or would be taken to jail.

206. During that conversation, Fenwick stated that a person did not need a driver's license to operate a scooter.

207. Fenwick nevertheless described his theory that operating a motorized scooter on a public roadway implied consent to provide identifying information following an accident.

208. Fenwick later telephoned another person and asked what charges he should use.

209. During that call, Fenwick explained that the device was motorized by an electric motor.

210. Fenwick further explained that the device looked like a bicycle with a small motor and could be folded.

211. The person consulted advised Fenwick to use charges for no operator's license, no insurance, and no registration.

212. Fenwick repeated those proposed charges and stated that he would proceed with them.

213. Fenwick then charged Mr. Franks with no operator's license under KRS 189.288, failure of owner to maintain insurance under KRS 304.39-080, and no registration plates under KRS 186.170.

214. The three vehicle-related charges placed on the citation were the same charges identified during the telephone consultation.

215. Portions of the telephone communications were muted, omitted, or redacted from the recording produced to Mr. Franks.

216. The communications involved more than administrative notification. They reflect LMPD participation in discussions concerning the threatened arrest and, through the charge-selection caller, the charges Fenwick ultimately used.

217. The consultation involved more than an administrative notification. LMPD personnel participated directly in deciding whether to arrest Mr. Franks and which statutes to use.

218. Fenwick therefore did not act as a lone officer who concealed his conduct from Metro personnel.

219. Fenwick sought guidance because he recognized that the situation was unfamiliar.

220. He described the device as a scooter or bicycle powered by an electric motor.

221. He nevertheless received and followed advice to charge no operator's license, no insurance, and no registration. Fenwick implemented that advice by citing the autocycle statute and the other vehicle-related provisions alleged above.

222. The unsupported vehicle-related charges resulted from a charging process involving multiple LMPD personnel.

223. Louisville Metro maintained policies, directives, procedures, or standard practices governing traffic enforcement, accident investigations, vehicle classification, arrest versus citation, criminal charging, report preparation, supervisory review, and initiation of felony proceedings.

224. The precise contents of those policies, directives, procedures, and standard practices are maintained by Louisville Metro.

225. Based on the charging decisions made after Fenwick sought guidance from other LMPD personnel, Mr. Franks reasonably believes that Louisville Metro either lacked

26

adequate policies requiring statutory verification and charge-specific probable cause or failed to enforce those policies during this incident.

226. Based on the participation of multiple LMPD personnel and the resulting charges, Plaintiff reasonably believes that one or more of the following deficiencies existed:

   a. Louisville Metro did not adequately require or enforce a procedure requiring officers to verify that a device satisfied the statutory definition of an autocycle before using KRS 189.288.

   b. Louisville Metro did not adequately require or enforce a procedure requiring officers to identify facts showing that a vehicle was legally subject to registration before charging a registration-plate offense.

   c. Louisville Metro did not adequately require or enforce a procedure requiring officers to identify facts showing that a person owned a covered motor vehicle before charging an owner-based insurance offense.

   d. Louisville Metro did not adequately require or enforce a procedure requiring officers to establish intentional or wanton conduct before charging criminal mischief arising from an accident.

   e. Louisville Metro did not adequately require or enforce a procedure requiring reliable evidence of pecuniary loss before permitting an officer to select a felony-level criminal-mischief charge.

   f. Louisville Metro did not adequately require or enforce a procedure requiring officers and supervisors to verify that probable cause separately supported each charge arising from the same incident.

g. Louisville Metro also failed to maintain or enforce adequate safeguards against using discretionary arrest or charging authority in response to a person's criticism, disagreement, denial of wrongdoing, or refusal to accept blame.

227. The need for those safeguards was apparent from the recurring responsibilities Louisville Metro assigned to patrol officers and the immediate consequences of charging errors.

228. The need did not depend on the particular make or model of electric bicycle involved here.

229. It arose from Metro's decision to authorize patrol officers to classify vehicles, select statutes, determine probable cause, arrest citizens, and initiate criminal proceedings.

230. The absence or nonenforcement of adequate safeguards permitted charges unsupported by the device and known facts to become the asserted basis for Mr. Franks's custodial arrest.

231. Louisville Metro assigned Fenwick and other LMPD officers the recurring responsibility of classifying transportation devices, applying Kentucky traffic and criminal statutes, assessing charge-specific probable cause, choosing between arrest and citation, and initiating criminal charges.

232. Those tasks carry an immediate risk to liberty because an officer's charging decision can cause a person to be arrested and jailed before a prosecutor or court independently examines the evidence.

233. Louisville Metro therefore had an obvious need to provide adequate training and legal guidance concerning statutory vehicle classifications and the requirements imposed on different devices.

234. Louisville Metro had an obvious need to train officers concerning the distinctions among electric bicycles, motorized bicycles, mopeds, motor scooters, motorcycles, autocycles, and conventional registered motor vehicles.

235. Louisville Metro had an obvious need to train officers concerning when those devices are subject to registration, insurance, security, license-plate, ownership, title, or operator-license requirements.

236. Louisville Metro had an obvious need to train officers concerning the limited application of KRS 189.288 to autocycles.

237. Louisville Metro had an obvious need to train officers concerning the factual showing required before charging a person under KRS 304.39-080 as the owner of a covered motor vehicle.

238. Louisville Metro had an obvious need to train officers concerning the requirement that a vehicle or device be legally subject to registration before charging a violation of KRS 186.170.

239. Louisville Metro had an obvious need to train officers concerning the distinction between a traffic accident and intentional or wanton property damage under KRS 512.020.

240. Louisville Metro had an obvious need to train officers concerning the evidence required to establish the applicable amount of pecuniary loss.

241. Louisville Metro had an obvious need to train officers that probable cause must exist separately for each charge.

242. Louisville Metro had an obvious need to train officers that citizens may question police, dispute accusations, deny wrongdoing, criticize an officer, and refuse to accept blame without being punished through arrest or additional charges.

243. The exact training received by Fenwick, Sergeant Lewis, Dean, and the other personnel who participated in the communications is maintained by Louisville Metro.

244. The lesson plans used by LMPD, the legal bulletins distributed to patrol officers, the course materials provided to supervisors, and records showing whether the participating personnel received or acknowledged those materials are also maintained by Louisville Metro.

245. The charging decisions support a reasonable inference that the participating LMPD personnel either did not receive adequate instruction concerning these recurring responsibilities or did not follow the instruction Louisville Metro provided.

246. The device was visibly a bicycle-style device with two wheels, handlebars, pedals, a bicycle seat, and a folding bicycle frame.

247. It lacked the defining physical characteristics of an autocycle, including three wheels, a steering wheel, automotive pedals, car-like seating, and a three-point safety-belt system.

248. Fenwick nevertheless charged Mr. Franks under an autocycle statute after seeking and receiving advice from other LMPD personnel.

249. Fenwick also charged registration and insurance offenses without identifying a make, model, year, vehicle identification number, registration state, license-plate number, or other facts showing that Mr. Franks possessed or owned a vehicle legally subject to those requirements.

250. Fenwick further charged first-degree criminal mischief arising from an accident without identifying facts showing intentional or wanton conduct or reliable evidence establishing the claimed felony-level loss.

251. The citation therefore reflected multiple failures to match the known facts to the elements of the selected statutes.

252. Those were not technical defects hidden from an ordinary officer or reviewer.

253. They were apparent from the physical device, Fenwick's own description of it, the circumstances of the accident, and the face of the charging materials.

254. Adequate training and legal guidance would have required the participating LMPD personnel to examine the statutory definitions and elements before advising Fenwick to use those charges.

255. The alleged failure to provide or enforce adequate training and legal guidance allowed the three unsupported vehicle-related charges to be selected and filed.

256. Upon information and belief, Louisville Metro's failure to provide and enforce adequate instruction for those recurring responsibilities, despite the predictable liberty consequences of charging errors, amounted to deliberate indifference.

257. Louisville Metro Failed to Maintain or Enforce Meaningful Supervisory Review.

258. Louisville Metro maintained systems for officers to create, submit, transmit, retain, and retrieve citations, arrest reports, incident reports, accident reports, body-camera recordings, and related charging materials.

259. Louisville Metro also maintained a chain of command through which officers could seek guidance from supervisors and other personnel concerning arrests and charges.

260. Fenwick used that chain of command or advisory process during the incident.

261. Fenwick expressly stated that he had consulted Sergeant Lewis.

262. Fenwick stated that Sergeant Lewis and Dean had conferred regarding the incident.

263. Fenwick later requested advice concerning which charges to use.

31

264. The advice he received resulted in the selection of the three vehicle-related charges placed on the citation.

265. The identity and authority of each participant, the scope of Sergeant Lewis's and Dean's roles, and any electronic audit or approval history are maintained by Louisville Metro.

266. If Sergeant Lewis, Dean, or another LMPD employee exercised supervisory or advisory responsibility over Fenwick's arrest and charging decisions, the facial defects in those decisions were available to that person.

267. A meaningful review would have required the participating personnel to determine whether the device was an autocycle, whether registration and insurance laws applied, whether Mr. Franks owned a covered motor vehicle, and whether separate probable cause supported each proposed charge.

268. A meaningful review of the criminal-mischief charge would also have required facts supporting intentional or wanton conduct and reliable evidence of the amount of alleged damage.

269. The information communicated during the calls included that the device looked like a scooter or bicycle and used an electric motor.

270. Fenwick also stated during the communications that a person did not need a driver's license to operate a scooter.

271. Despite that information, the consultation produced advice to charge no operator's license, no insurance, and no registration. Fenwick implemented that advice by citing the autocycle statute and the registration and insurance provisions identified above.

32

272. The consultation therefore failed to identify defects apparent from Fenwick's own description of the device.

273. If Louisville Metro's procedures required supervisory review, the review was inadequate or was not meaningfully performed.

274. If Louisville Metro's procedures did not require meaningful review of this custodial arrest and charging decision, Metro permitted officers to initiate a felony case without a safeguard requiring verification of statutory applicability and charge-specific probable cause.

275. The known facts support a reasonable inference that Louisville Metro's supervisory or advisory safeguards were inadequate, were not meaningfully performed, or were not enforced during this incident.

276. A meaningful supervisory or legal review would have prevented or promptly corrected the unsupported vehicle-related charges.

277. Louisville Metro Had Prior Notice of the Risk of Unsupported and Retaliatory Street-Level Enforcement.

278. Before August 13, 2025, Louisville Metro had received formal governmental notice of asserted deficiencies involving LMPD's street-level stops, detentions, arrests, treatment of persons who criticized police, supervision, and officer accountability.

279. Those governmental findings did not specifically concern the Rattan LM Ultra or electric-bicycle classification.

280. They did place Louisville Metro on notice of the broader constitutional risk presented here: unsupported or retaliatory enforcement during ordinary street encounters without meaningful supervisory correction.

281. Louisville Metro also maintained arrest records, charging records, complaint records, training records, audit records, supervisory-review records, and disciplinary records capable of identifying recurring problems in street-level enforcement and charging decisions.

282. Those records are controlled by Louisville Metro and are not presently available to Mr. Franks.

283. Upon information and belief, despite the prior governmental notice and the recurring nature of the tasks involved, Louisville Metro failed to ensure that its officers and supervisors verified statutory applicability and charge-specific probable cause before using multiple charges to justify a custodial arrest.

284. Louisville Metro's response to the identified concerns was insufficient to prevent multiple LMPD personnel from participating in the unsupported charging process alleged here.

285. Louisville Metro's municipal failures directly caused Mr. Franks's injuries.

286. A minimally adequate statutory-verification process would have identified that the two-wheeled bicycle-style device was not an autocycle within the meaning of KRS 189.288.

287. A minimally adequate registration review would have required facts showing that the device was legally required to be registered and display a license plate.

288. A minimally adequate insurance review would have required facts showing that Mr. Franks owned a covered motor vehicle required to maintain security.

289. A minimally adequate criminal-mischief review would have required facts showing intentional or wanton damage and reliable proof of the amount of pecuniary loss.

290. A minimally adequate charge-specific probable-cause review would have required an independent factual basis for each charge.

291. A minimally adequate First Amendment safeguard would have prohibited escalation of discretionary arrest or charging decisions because Mr. Franks disputed accusations, denied wrongdoing, or questioned police authority.

292. Adequate and enforced safeguards requiring statutory verification and meaningful review would have prevented the unsupported vehicle-related charges from being selected or would have caused them to be promptly corrected.

293. Those safeguards would also have provided a meaningful opportunity to prevent an accident investigation from becoming a felony prosecution unsupported by evidence of intentional or wanton conduct or by reliable evidence establishing the required pecuniary loss.

294. Instead, Fenwick sought guidance through LMPD channels, described the device as a scooter or bicycle powered by an electric motor, received advice identifying the vehicle-related charges, and filed those same charges.

295. The unsupported charges therefore did not result solely from a unilateral misunderstanding by one officer.

296. They resulted from an arrest and charging process in which multiple LMPD personnel participated and in which Metro's training, legal guidance, and supervisory safeguards failed to identify defects apparent from the known facts.

297. Those failures allowed the charges to become the asserted legal basis for Mr. Franks's arrest, incarceration, cash bond, no-driving condition, and prosecution.

298. Louisville Metro's inadequate or unenforced policies, training, legal guidance, and supervisory procedures were closely related to and the moving force behind the violations of Mr. Franks's First and Fourth Amendment rights.

299. Louisville Metro acted with deliberate indifference to the predictable consequences of allowing officers to perform recurring arrest and charging functions without adequate and enforced safeguards requiring statutory verification, charge-specific probable cause, and meaningful supervisory review.

300. Mr. Franks is entitled to compensatory damages, nominal damages, declaratory relief, attorney fees, costs, and all other relief permitted by law against Louisville Metro.

### DEMAND FOR RELIEF

WHEREFORE, Mr. Franks respectfully requests that this Court enter judgment in his favor and award him the following relief:

a. Compensatory damages;

b. Nominal damages;

c. Punitive damages against the individual Defendants as permitted by law;

d. A declaration that Defendants' actions violated the First and Fourth Amendments;

e. Interest;

f. Attorney fees;

g. Costs and expenses; and

h. Any and all other relief available under law or equity.

## JURY DEMAND

Mr. Franks demands a jury trial on all triable issues.

Respectfully Submitted,

/s/ Robert L. Thompson
**Robert L. Thompson** (KY: 98791)
THOMPSON LEGAL LLC
1230 S Hurstbourne Pkwy, Suite 210
Louisville, Kentucky 40222
P: 502-366-2121
F: 502-438-9999
Robert@RthompsonLegal.com
Attorney for Plaintiff

## Certificate of Service

I hereby certify that on July 28, 2026, a true and correct copy of the foregoing First Amended Complaint with Jury Demand was filed electronically with the Clerk of Court through the Court's CM/ECF system. Notice of this filing will be sent electronically to all counsel of record registered to receive electronic service through CM/ECF.

I further certify that any party not registered to receive electronic service through CM/ECF will be served in accordance with the Federal Rules of Civil Procedure.

/s/ Robert L. Thompson
Robert L. Thompson
