UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| CRISINCIO FRANKS | ) | |
| | ) | |
| Plaintiff | ) | Civil Action No. 3:26-cv-411-DJH |
| v. | ) | |
| | ) | |
| | ) | |
| | ) | |
| OFFICER PAUL FENWICK, ET AL. | ) | |
| | ) | |
| Defendant | ) | |

(*electronically filed*)

**MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Come Defendants, Officer Paul Fenwick ("Officer Fenwick") Sergeant Bobby Lewis ("Sergeant Lewis"), and Sergeant Dean Sturgeon ("Sergeant Sturgeon"), in their individual capacities only only (collectively, "Defendants"), by counsel, and pursuant to Fed. R. Civ. P. 12(b)(6), move dismiss the claims brought against them in the Second Amended Complaint, [R. 13], filed by Plaintiff, Crisincio Franks ("Plaintiff"). As grounds for this Motion, Defendants state as follows:

**<u>SUMMARY OF CLAIMS AND ALLEGATIONS</u>**

The moving Defendants are veteran law enforcement officers serving the Louisville Metro Police Department ("LMPD") at all times relevant to this action. On August 13, 2025, "Officer Fenwick responded to a traffic accident near Lexington Road and Bauer Avenue in Louisville, Kentucky." [R. 13, ¶ 21]. At the time of the accident, Plaintiff "was riding a Rattan LM Ultra motorized electric bicycle, or a materially similar Rattan motorized electric bicycle," *id.*, ¶ 23, which according to Plaintiff "is not a car, truck, autocycle, motorcycle, or other traditional

registered motor vehicle." *Id.*, ¶ 27. Plaintiff states, "Any reasonable officer looking at the device would know that the legal classification of the device was at least materially different from a car, truck, autocycle, or conventional registered motor vehicle." *Id.*, ¶ 30. Despite this, Plaintiff alleges, Officer Fenwick "treated a motorized electric bicycle as though it were a car, truck, autocycle, or traditional registered motor vehicle." *Id.*, ¶ 47. Specifically, Officer Fenwick allegedly issued citations for "no operator license under an autocycle statute, failure of owner to maintain insurance, no or expired registration plates, and first-degree criminal mischief." *Id.*, ¶ 2. Plaintiff alleges that the citations were unsupported by the facts known to Officer Fenwick at the time.[1] *Id.*, ¶¶ 7-8.

In Plaintiff's telling:

> 56. Mr. Franks spoke during the encounter.
>
> 57. He denied wrongdoing.
>
> 58. He questioned the basis for Fenwick's demands.
>
> 59. He disputed Fenwick's effort to turn an accident involving a motorized electric bicycle into a felony and motor-vehicle prosecution.
>
> 60. He refused to accept blame for offenses that did not fit the facts.
> . . .
> 63. Fenwick did not like being challenged.
>
> 64. Instead of issuing only lawful citations supported by facts, Fenwick escalated the encounter by arresting Mr. Franks and causing a felony case to be filed.

*Id.*, ¶¶ 56-60, 63-64.

[1] While Plaintiff's factual allegations are taken as true at the motion to dismiss stage, in certain circumstances, the Court may also consider other material incorporated into the pleadings. To the extent that the Court deems proper, Plaintiff's allegations should be viewed in light of the video footage incorporated into the pleadings as EX 1 and 2 to Metro's Motion to Dismiss.

Following his arrest, Plaintiff was arraigned on August 14, 2025, remained in custody before being released on his own recognizance on August 21, 2025, and upon preliminary hearing on October 3, 2025, "[t]he court dismissed all four charges without prejudice." *Id.*, ¶¶ 83-92.

On May 29, 2026, Plaintiff filed suit against Officer Fenwick and Metro, seeking to recover compensatory damages, nominal damages, punitive damages, declaration of rights, interest, attorneys fees,[2] and costs and expenses. *Id.*, p. 19. In his initial Complaint, Plaintiff asserted separate §1983 claims against Metro and Officer Fenwick for First Amendment Retaliation (Count I), Malicious Prosecution (Count II), and False Arrest, False Imprisonment, and Unlawful Seizure (Count IV). *Id.*, ¶¶ 85-113, 120-130. Additionally, Plaintiff asserted independent state law claims against Officer Fenwick for malicious prosecution (Count III) and false arrest and imprisonment (Count V). *Id.*, ¶114-19, 131-35. Subsequently, Plaintiff amended her complaint to join Sergeant Lewis and Sergeant Sturgeon as defendants. [*See generally*, R. 7]. Her operative Second Amended Complaint reasserts his initial causes of action against Metro and Officer Fenwick and adds Sergeant Lewis and Sergeant Sturgeon to the claims pleaded under Counts II, III and IV. [*See generally*, R. 13].

## LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 12(b)(6), dismissal is proper for "failure to state a claim upon which relief may be granted." To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

[2] 42 U.S.C. § 1988 provides that "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." While these statutory fee awards are typically granted in the context of prevailing plaintiffs, "§ 1988 authorizes a district court to award attorney's fees ***to a defendant*** 'upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation.'" *Fox v. Vice*, 563 U.S. 826, 833 (2011) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 41 (1978)) (emphasis added). Defendants affirmatively deny Plaintiff's claim for relief under § 1988 and reserves the right to pursue attorney's fees to the extent that they are prevailing parties for purposes of the statute.

face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he district court need not accept a 'bare assertion of legal conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). A complaint is insufficient if it pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Id.* at 679.

## ARGUMENT

### I. PLAINTIFF'S § 1983 CLAIMS ARE BARRED BY QUALIFIED IMMUNITY.

The Sixth Circuit holds, "qualified immunity represents an 'immunity from suit,' so courts must address the defense at the earliest possible point." Pearson, 170 F.4th at 1040 (citing Coffey v. Carroll, 933 F.3d 577, 584 (6th Cir. 2019)). Thus, "when a defendant invokes qualified immunity ***it becomes the plaintiff's burden*** to demonstrate: (1) that the defendant violated a constitutional right and (2) that this right was clearly established at the time of the alleged violation." *Clark v. Stone*, 998 F.3d 287, 298 (6th Cir. 2021) (emphasis added). "This Court has discretion to choose which prong of the qualified immunity inquiry to consider first." *Schulkers v. Kammer*, 955 F.3d 520, 532 (6th Cir. 2020) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). "If the court finds that the plaintiff's right was not clearly established at the time of the defendant's conduct, the court does not need to determine whether the alleged conduct was in fact unconstitutional." *Id.*

### A. Plaintiff Cannot Meet His Burden of Showing Clearly Established Right

To meet her burden for defeating qualified immunity, "[P]laintiff[] must show that [Defendants] violated a 'clearly established' right." *Pearson v. Michigan Dep't of Corr.*, 170 F.4th 1027, 1036 (6th Cir. 2026) (quoting *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam)). "And that means he must produce an on-point, binding case." *Brown v. Giles*, 95 F.4th 436, 439 (6th Cir. 2024) (citing *Bell v. City of Southfield*, 37 F.4th 362, 367 (6th Cir. 2022) ("Brown points to only one unpublished, out-of-circuit opinion that discusses the danger of head tasings. As already explained, that's not enough to meet his burden."). Plaintiff has not and cannot meet this burden, and **dismissal is proper on this basis alone.** *Schulkers v. Kammer*, 955 F.3d 520, 532 (6th Cir. 2020) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)) ("If the court finds that the plaintiff's right was not clearly established at the time of the defendant's conduct, the court does not need to determine whether the alleged conduct was in fact unconstitutional."); *Pearson* at 1036 (citing Crawford v. Tilley, 15 F.4th 752, 762–63 (6th Cir. 2021)) (emphasis added) ("Plaintiffs must meet [the] two well-known elements when defendants invoke a qualified-immunity defense at the pleading stage in a § 1983 suit."); Arrington-Bey v. City of Bedford Heights, Ohio, 858 F.3d 988, 992 (6th Cir. 2017) ("Because no case clearly established the unlawfulness of the decisions made during Omar's arrest and detention, the officers involved are entitled to qualified immunity.").

Absent a citation to caselaw decided on similar facts placing each of the claimed constitutional violations beyond debate, Plaintiff cannot carry his burden to defeat qualified immunity at the pleading stage, and therefore, Defendants must be dismissed.

**B. Plaintiff Failed to Allege Sufficient Facts to State a Violation of his First or Fourth Amendment Rights – Counts I, II, and IV**

Plaintiff asserts three separate § 1983 claims arising from the alleged violations of Plaintiff's First and Fourth Amendments rights. In essence, the three § 1983 claims represent alternative theories of liability for the same underlying conduct, i.e., the alleged wrongful arrest on false charges. However, on the face of the pleadings, the citations and custodial arrest were supported by probable cause. Accordingly, as detailed below, Plaintiff failed to state a claim for violation of constitutional rights, and therefore the § 1983 claims against Defendants must be dismissed.

**1. Citations Issued by Officer Fenwick Were Supported by Probable Cause**

As the basis for his Fourth Amendment malicious prosecution claim, Plaintiff alleges that "Fenwick acted maliciously and without probable cause" in "issuing the citations, selecting the charges, causing a felony case to be opened, and causing Mr. Franks to be held under legal process." [R. 13, ¶¶ 137, 152]. To make out a claim for malicious prosecution, Plaintiff must show "(1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (citing *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010)). Here, as alleged, "Fenwick charged Mr. Franks with no operator license under an autocycle statute, failure of owner to maintain insurance, no or expired registration plates, and first-degree criminal mischief." [R. 13, ¶2]. As alleged, the cited offenses are consistent with the facts known to Officer Fenwick at the time of Plaintiff's arrest, including Plaintiff's admitted involvement in a collision

with an automobile on a public roadway, Officer Fenwick's direct observations regarding the design of Plaintiff's electric bicycle, and his visual inspection of both accident involved vehicles. As detailed below, each of the citations Officer Fenwick issued were supported by probable cause. Therefore, there can be no liability for malicious prosecution, and Plaintiff's claim must be dismissed.

*First*, Plaintiff was cited under KRS 304.39-080 for failure to maintain insurance required as by the Kentucky Motor Vehicle Reparations Act ("MVRA"). *Id.*, ¶ 27. This citation was supported by probable cause. Pursuant to the MVRA, "***Any person*** who registers, ***operates***, maintains or uses ***a motor vehicle on the public roadways*** of this Commonwealth ***shall, as a condition of such*** registration, ***operation***, maintenance ***or use of such motor vehicle and use of the public roadways***, be ***deemed to have accepted the provisions of this subtitle***[.]" KRS 304.39-060 (emphasis added).

As defined by the MVRA: "'Motor vehicle' means any vehicle which transports persons or property upon the public highways of the Commonwealth, propelled by other than muscular power. . . ." KRS 304.39-020(7). "[T]he purpose of including 'propelled by other than muscular power' was to limit the applicability of the MVRA to vehicles that were self-propelled by an internal motor." *See Davis v. Progressive Direct Ins. Co.*, 626 S.W.3d 518, 522 (Ky. 2021). Here, as depicted in the Second Amended Complaint, Plaintiff's vehicle is a "motorized electric bicycle" propelled by "electric hub motor." [R. 13, ¶ 7; *see also id.*, ¶ 25]. Thus, Plaintiff's electric bicycle is a vehicle propelled by force beyond manual labor, which constitutes a motor vehicle under the MVRA unless it falls into one of the enumerated statutory exemptions. Specifically, the MVRA provides, "'Motor vehicle' shall not mean moped as defined in this section or an electric low-speed

scooter as defined in KRS 189.010." In other words, Plaintiff's electric bicycle is considered a motor vehicle under the MVRA unless it meets one of the following definitions:

> (8) "Moped" means either a motorized bicycle whose frame design may include one (1) or more horizontal crossbars supporting a fuel tank so long as it also has pedals, or a motorized bicycle with a step-through type frame which may or may not have pedals rated no more than two (2) brake horsepower, a cylinder capacity not exceeding fifty (50) cubic centimeters, an automatic transmission not requiring clutching or shifting by the operator after the drive system is engaged, and capable of a maximum speed of not more than thirty (30) miles per hour;

KRS 304.39-020(8).

> (26) Electric low-speed scooter" means a device that: (a) Weighs less than one hundred (100) pounds; (b) Is equipped with wheels; (c) Is equipped with handlebars; (d) Is equipped with a brake adequate enough to stop and park the device; (e) Is designed to be stood or sat upon; (f) Is propelled by an electric motor, human power, or both; and (g) Is designed to operate at a maximum speed of twenty (20) miles per hour, on a paved level surface, with or without human propulsion[.]

KRS 189.010(26).

On the face of the pleadings, Plaintiff's electric bicycle does qualify for the MVRA's moped exemption because (1) its frame design includes a "crossbar[] supporting a fuel tank," but it does not "also ha[ve] pedals"; and (2) it is capable of a maximum speed which exceeds "more than thirty (30) miles per hour." KRS 304.39-020(8). [*See* R. 13, ¶ 28; *see also id.* ¶ 25; R, 1, ¶ 23 (Plaintiff's initial Complaint confirming the vehicle's "top speed is approximately ***thirty-two miles per hour***") (emphasis added)]. Likewise, the electric bicycle does not qualify for the MVRA's electric low-speed scooter exemption because it is not designed to operate at a maximum speed of twenty (20) miles per hour, on a paved level surface, with or without human propulsion." KRS 189.010(26)(g). [*See* R. 13, ¶ 28; R. 1, ¶ 23].

Since neither exception to the MVRA applies, based on the facts known to Defendant at the time of the arrest, it was reasonable to conclude that Plaintiff's electric bicycle was a motor vehicle governed by the MVRA's, including the provision requiring all motor vehicle owners to maintain insurance on any motor vehicle present in the commonwealth. *See* KRS 304.39-060. Both owners and operators of a motor vehicle are subject to penalties for failure to comply with the MVRA's insurance requirement, including "fined not less than five hundred dollars ($500) nor more than one thousand dollars ($1,000), or sentenced to not more than ninety (90) days in jail, or both." As such, failure to maintain insurance in violation of the MVRA is cause for a peace officer to arrest without warrant. *See* KRS 431.005(1); *see also* KRS 431.060.

*Second*, Plaintiff was charged under KRS 186.170 for operating his vehicle without proof of registration. [R. 13, ¶ 42]. This citation was supported by probable cause. Plaintiff contends that "Fenwick did not have facts showing that the Rattan motorized electric bicycle was required to display Kentucky registration plates." *Id.*, ¶ 44. However, subject to limited exceptions, Kentucky law requires registration of ***all*** motor vehicles operated on public highways: "Before the owner of a motor vehicle, or street-legal special purpose vehicle as defined in KRS 186.077, may operate it or permit its operation upon a highway, the owner shall apply for registration in accordance with administrative regulations promulgated by the cabinet[.]" KRS 186.020(1); *see also* KRS 186A.035 ("all motor vehicles, including motorcycles, with a gross vehicular weight of ten thousand (10,000) pounds or less, . . . shall be placed in a system of year-round registration . . . in order to distribute the work of registering motor vehicles as uniformly as practicable"); KRS 186.050(1) (annual registration fee of $11.50 applies to "Motor vehicles, including pickup trucks and passenger vans"), (2)(a) ("the annual registration fee for each motorcycle shall be nine dollars ($9)). As depicted in the Complaint, Plaintiff's electric bicycle is a motor vehicle within the

purview of KRS 186.020(1) and therefore subject to the registration provisions set forth under KRS 186.170. Absent any indication that the electric bicycle was exempted from the motor vehicle registration and registration display mandated by statute, the totality of the circumstance support Officer Fenwick's conclusion that Plaintiff was in violation of the law, giving rise to probable cause for issuing a citation. *See United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993) (finding probable cause that traffic violation occurred where the officer "testified that he noticed before he stopped the car that it did not have a visible license plate and that he recognized that this was a violation of law.").

*Third*, Plaintiff was cited for driving without an operator's license. [R. 13, ¶ 32]. This citation was supported by probable cause. In his Complaint, Plaintiff takes issue with Officer Fenwick's alleged reference to KRS 189.288(1) because "KRS 189.288 applies to an autocycle, and an autocycle is a specific three-wheeled vehicle with features not present here." *Id.*, ¶ 34. Plaintiff contends, "Any reasonable officer looking at the device would know that it was a motorized electric bicycle, not an autocycle." *Id.*, ¶ 24.

Under the Traffic Code, the term "autocycle" is referenced both as distinct category of motor vehicles and a subtype of the "motorcycle" category, depending on context. *See* KRS 186.010(15), (17), (19). Defendants acknowledge that the licensing requirement cited under KRS 189.288(1) applies specifically to the distinct category of motor vehicles defined as having certain features, including three wheels, airbags, three point seat-belt, and steering wheel, which would not apply to Plaintiff's electric bicycle. *See* KRS 186.010(19). However, the licensing requirement under KRS 189.288(1) mirrors a separate licensing requirement applicable to motorcycle operators under a parallel statute, KRS 189.285(1). For purposes of KRS 189.285, motorcycles are defined more narrowly than the broader definition under KRS 189.010(15). Specifically, a vehicle is

considered a motorcycle under KRS 189.285 regardless of whether its maximum speed exceeds 50 miles per hour. KRS 189.285(6). As defined under KRS 189.285(6), Plaintiff's electric bicycle does in fact constitutes a "motorcycle" subject to the licensing requirement under KRS 189.285(1)(a). Thus, Defendant's reference to KRS 189.288(1) in the citation does not invalidate the charge of driving without an operator's license. *See Smith v. Peyman*, 93 F. Supp. 3d 738, 745 (E.D. Ky. 2015) (citing *Devenpeck v. Alford,* 543 U.S. 146, 154 (2004)) ("The existence of probable cause of a related offense will excuse a lack of probable cause for other offenses charged, and the offense for which there is probable cause to arrest need not be closely related to or based on the same conduct as the offense for which the plaintiff was arrested.").

*Fourth*, Plaintiff was cited for criminal mischief under KRS 512.020. [R. 13, ¶ 49]. In his Second Amended Complaint, Plaintiff contends that the "criminal-mischief charge lacked probable cause because Fenwick had no facts showing intentional or wanton damage and no competent proof of the pecuniary loss required for first-degree criminal mischief." The Criminal Code defines the offense of criminal mischief in the first degree to include intentional or wanton conduct that "Defaces, destroys, or damages any property causing pecuniary loss of five hundred dollars ($500) or more." KRS 512.020(1)(A). Here, at the time of the subject arrest, Officer Fenwick was aware that Plaintiff was operating a motor vehicle on a public roadway when he collided with another motorist, causing significant damage to both involved vehicles. While Plaintiff contents that Officer Fenwick lacked probable cause absent "a reliable repair invoice, owner statement, estimate, photograph, or other competent evidence establishing the required pecuniary loss," [R. 13, ¶ 53], no legal authority supports such a requirement. But see *Helton v. Whitley Cnty. Fiscal Ct.*, No. 6:22-CV-140-CHB, 2025 WL 47539, at *9 (E.D. Ky. Jan. 7, 2025) (finding probable cause for criminal mischief charge where the plaintiff admitted that he uprooted

residential mailboxes, and the investigating officer "also took pictures at the scene, considered the cost of the damage to the mailboxes, and determined that the total would be well above $500). Here, the facts within Officer Fenwick's knowledge were sufficient "[were] sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that [Plaintiff] committed ... [the] offense [of Criminal Mischief in the First Degree]." *Id.* (alterations in original).

Probable cause is not a high bar." *United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018) (alteration omitted) (quoting *District of Columbia v. Wesby*, 583 U.S. 48 (2018)). The probable cause standard "does not mandate that law enforcement operatives should conduct quasi-trials as a necessary predicate to the warrantless arrest of perpetrators in every situation wherein the subject asserts a purported legal excuse for his actions." *Painter v. Robertson*, 185 F.3d 557, 571 n.21 (6th Cir. 1999). In sum, based on the facts known at the time, Officer Fenwick had good reason to believe that committed the charged violations, which is sufficient to establish probable cause for the citations issued in this case. Accordingly, the citations were supported by probable cause, and Plaintiff's malicious prosecution claim fails.

**2. Custodial Arrest Was Supported by Probable Cause**

In support of his wrongful arrest claim under Count IV of the Second Amended Complaint, Plaintiff alleges "Defendants' arrest and imprisonment of Mr. Franks violated the Fourth Amendment." [R. 13, ¶ 174]. At the pleading stage, in order "[t]o show in response to [Defendants'] motion to dismiss that the arrest was wrongful, [Plaintiff] must plausibly allege that it was unsupported by probable cause." *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015) (citing *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003)). Probable cause for arrest exists when "the facts and circumstances within [the officer's] knowledge and of which [he] had

reasonably trustworthy information [are] sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense." *Beck v. State of Ohio*, 379 U.S. 89, 91, 85 (1964).

"If probable cause exists to arrest the suspect for any of the charged offenses, then the false arrest claim must fail." *Fineout v. Kostanko*, 780 F. App'x 317, 328 (6th Cir. 2019) (citing *Lyons v. City of Xenia*, 417 F.3d 565, 573 (6th Cir. 2005)). Here, as discussed in Section I.B.1. above, each of the offenses cited by Officer Fenwick was supported by probable cause. He was aware of the vehicle's basic design features, which were consistent with certain categories of regulated vehicles defined by statute. He was aware that Plaintiff's vehicle lacked visible registration tags, that Plaintiff failed to disclose identification, vehicle registration, or insurance information during an investigation at the scene of a motor vehicle accident. Plaintiff's own allegations confirm that Plaintiff refused to cooperate with Defendant's investigation. [R. 1, ¶ 51-58]. The allegations that Plaintiff "denied wrongdoing" and "refused to accept blame for offenses that did not fit the facts" do not negate probable cause, as law enforcement officers "do[] not have to investigate independently every claim of innocence." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000) (citing *Baker v. McCollan,* 443 U.S.137, 145–56 (1979)).

Notwithstanding Plaintiff's allegation that "Kentucky law also favors citation instead of arrest for minor offenses when there are reasonable grounds to believe the person will appear," [R. 13, ¶ 167], all of the cited offenses establish legal grounds for custodial arrest. KRS 431.015(1)(b); KRS 431.015(1)(b), (d); *see also* KRS 304.39-060; *Hoover v. Walsh*, 682 F.3d. 481, 499-500 (6th Cir. 2012) (the plaintiff's failure to produce a driver license or vehicle registration during a traffic stop gave probable cause to arrest him for a misdemeanor offense); *see also Ferguson*, 8 F.3d at 392; *Smith*, 93 F. Supp. 3d at 745. Therefore, Plaintiff's false arrest claim fails on its face.

#### 3. Plaintiff Fails to State Retaliation Claim under First Amendment

In support of his First Amendment claim, Plaintiff alleges that he "engaged in protected speech when he disputed the accusations, questioned the legal basis for Fenwick's demands, denied wrongdoing, and protested being treated as a criminal for an accident and for statutes that did not apply." [R. 13, ¶ 125]. As the purported First Amendment retaliation, Plaintiff alleges "Fenwick took adverse action against Mr. Franks by arresting him, causing him to be jailed, charging him with a felony, and causing a criminal prosecution to be filed." *Id.*, ¶ 88]. In light of the fact and circumstances giving rise to probable cause for the citations and arrest in this case, Plaintiff's retaliation claim is not plausible and must be dismissed.

## II. PLAINTIFF FAILED TO SATISFY MINIMUM PLEADING STANDARD TO SUSTAIN STATE LAW CLAIMS AGAINST DEFENDANTS.

### A. State Law Claims Brought Against Officer Fenwick in His Official Capacity Are Barred by Sovereign Immunity

Per the Complaint, "Defendant Officer Paul Fenwick is a police officer employed by the Louisville Metro Police Department . . . sued in his individual and official capacities." [R. 13, ¶ 11]. When sued in their official capacity, LMPD officers are "cloaked with the same immunity as the government or agency he/she represents." *Schwindel*, 113 S.W.3d at 169 (citing *Yanero*, 65 S.W.3d at 522 and *Franklin County v. Malone*, 957 S.W.2d 195 (Ky. 1997)). As Metro is entitled to sovereign immunity, so too are the Metro Defendants on the claims asserted against them in their official capacity. *See Meinhart v. Louisville Metro Gov't*, 627 S.W.3d 824, 831 (Ky. 2021) ("[T]he trial court erred in concluding Metro was not entitled to sovereign immunity."); *Louisville/Jefferson County Metro Government v. Cowan*, 508 S.W.3d 107, 109 (Ky. App. 2016) (explaining that Louisville Metro is "a classification of county government and thus an arm of the Commonwealth entitled to sovereign immunity"). Here, on the claims asserted against him in his

official capacity, Defendant is entitled to the same immunity as Metro. Thus, those claims should be dismissed with prejudice for failure to state a claim.

### B. Plaintiff Fails to Allege Sufficient Facts to Plead Common Law Malicious Prosecution

To the extent that Plaintiff seeks recovery from Defendant in his individual-capacity, Plaintiff's Complaint fails to state a claim for malicious prosecution. Under Kentucky law, there are five elements to an action for malicious prosecution:

> 1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding, or an administrative disciplinary proceeding against the plaintiff;
>
> 2) the defendant acted without probable cause;
>
> 3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice; and in the civil context, means seeking to achieve a purpose other than the proper adjudication of the claim upon which the underlying proceeding was based;
>
> 4) the proceeding ... [was] terminated in favor of the person against whom it was brought; and
>
> 5) the plaintiff suffered damages as a result of the proceeding.

*Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016).

Kentucky law traditionally disfavors malicious prosecution claims, *see Broaddus v. Campbell*, 911 S.W.2d 281, 285 (Ky. App. 1995) (citing *Reid v. True*, 302 S.W.2d 846 (Ky. 1957)), and the elements of malicious prosecution are strictly construed, *Davidson v. Castner-Knott Dry Goods Co*., 202 S.W.3d 597, 602 (Ky. App. 2006) (citing *Prewitt v. Sexton*, 777 S.W.2d 891, 895 (Ky. 1989)). The crucial difference between an action under § 1983 and one under Kentucky common law is that the former does not require a showing of malice, while the latter does. *Martin*, 507 S.W.3d at 11-12.

Here, even treating the allegations as true, Plaintiff's Complaint fails to sufficiently plead all essential elements to a viable malicious prosecution claim. First, the totality of the circumstances, as alleged, gave rise to probable cause for the arrest and citations. See Section III.A.i, *supra*. Second, Plaintiff does not allege sufficient facts to prove that the charges brought against him in Jefferson Circuit Court were resolved in his favor. There is no allegation that Plaintiff was acquitted of the charges or obtained a reversal of conviction on appeal. Instead, Plaintiff merely alleges that "[t]he court dismissed all four charges without prejudice." [R. 13, ¶ 92]. Notably, the case still remains on the Circuit Court's active docket. Commonwealth v. John Doe, Case No. 25-F-006214. Absent a more meaningful victory, Plaintiff's allegations cannot satisfy the minimum pleading standard for a viable malicious prosecution claim.

### C. Plaintiff Fails to Allege Sufficient Facts to Plead False Arrest and False Imprisonment

In Kentucky, "[a] law enforcement officer is liable for false imprisonment unless he or she enjoys a privilege or immunity to detain an individual." *Dunn v. Felty,* 226 S.W.3d 68, 71 (Ky. 2007). One such privilege is "an arrest without a warrant in which the officer has probable cause . . . to believe that a crime was committed and that the plaintiff committed it." *Id.* Here, as discussed in in Section I.B.1. above, Plaintiff's arrest was supported by probably cause, which precludes Plaintiff's common law false arrest and imprisonment claim.

## CONCLUSION

For the reasons set forth above, Defendant Paul Fenwick respectfully request that Franks' claims against it be dismissed with prejudice.

Respectfully submitted,

MIKE O'CONNELL
JEFFERSON COUNTY ATTORNEY

/s/ Quiyarra McCahey

Quiyarra McCahey
Assistant Jefferson County Attorneys
First Trust Centre
200 S. Fifth Street, Suite 300N
Louisville, Kentucky 40202
(502) 574-6303
quiyarra.mccahey@louisvilleky.gov
*Counsel for Defendant Officer Paul Fenwick*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2026, the foregoing was filed with the clerk of the court by using the CM/ECF system, which will send electronic copies to all counsel of record.

/s/ Quiyarra McCahey
Quiyarra McCahey