**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| **CRISINCIO FRANKS** | : | **Civil Action No.** 3:26-cv-00411-DJH |
| | : | |
| Plaintiff, | : | **Judge:** Chief Judge David J. Hale |
| | : | |
| -vs- | : | |
| | : | |
| **OFFICER PAUL FENWICK et al** | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE SECOND AMENDED COMPLAINT (DOCS. 22 AND 23)**

## I. INTRODUCTION

Officer Fenwick responded to a traffic accident involving Franks's electric bicycle. He arrested Franks and charged him with operating an autocycle without a license, failing as an owner to maintain insurance, operating without registration plates, and first-degree criminal mischief. Franks alleges that Fenwick lacked probable cause for every charge and used the charges to punish him for questioning Fenwick's demands and refusing to provide identification. Franks spent more than a week in jail. All four charges were dismissed.

Count I alleges First Amendment retaliation. Defendants argue that probable cause justified Fenwick's actions and that the video defeats Franks's account. But the complaint identifies the criticism, the ensuing consultations, and the unsupported charges that allegedly punished that criticism. Video controls where it clearly contradicts pleaded facts. Defendants' commentary does not.

Count II alleges federal malicious prosecution. Defendants maintain that the charges had probable cause, yet concede that the autocycle statute Fenwick used did not apply. They now invoke a motorcycle-licensing statute in their motion to dismiss. Even if that different statute justified an arrest, it would not automatically defeat Franks's claim that the unsupported felony criminal-mischief charge caused his continued detention. An accident alone does not establish intentional or wanton property damage and the required loss. And because the prosecution ended without a conviction, Franks satisfies the federal favorable-termination requirement.

Count III alleges Kentucky malicious prosecution against Fenwick and Lewis. Defendants again rely on probable cause and argue that dismissal without prejudice does not establish favorable termination. Franks alleges that both officers procured unsupported charges for an improper purpose and that the Commonwealth produced no evidence before the charges were dismissed. Kentucky law requires the Court to consider why the prosecution ended. The words "without prejudice" do not answer that question.

Count IV alleges federal false arrest and imprisonment. Defendants say Fenwick had lawful grounds to arrest Franks. The complaint disputes every asserted ground, including the facts necessary to establish a licensing violation, an owner's insurance obligation, a registration requirement, or first-degree criminal mischief. Defendants cannot establish probable cause as a matter of law by supplying missing facts through their motion or relying on information obtained after the arrest.

Count V alleges Kentucky false arrest and imprisonment against Fenwick individually. Franks alleges that Fenwick confined him without probable cause or lawful arrest authority. Kentucky's restrictions on custodial arrest require separate consideration, and sovereign immunity does not dispose of an individual-capacity claim.

Count VI seeks to hold Metro liable under *Monell*. Metro argues that the complaint identifies neither a constitutional violation nor a municipal cause. Franks alleges both. He connects prior governmental notice, uncorrected training and supervision deficiencies, and supervisory participation to the decisions that produced the charges. His claim concerns Metro's own failures, not merely its employment of Fenwick.

Qualified immunity must likewise be assessed on the properly considered facts and clearly established law. It does not authorize resolving disputed factual inferences for the officers. The Court should deny both motions, Docs. 22 and 23.

## II. FACTUAL BACKGROUND

Officer Paul Fenwick responded to a traffic accident near Lexington Road and Bauer Avenue on August 13, 2025. (Doc. 13, ¶ 21, PageID 117). Franks was riding a Rattan electric bicycle with two wheels, pedals, handlebars, a bicycle seat, an electric motor, and a folding frame. (*Id.* ¶ 7, PageID 114). The bicycle had no steering wheel, third wheel, or safety-belt system. (*Id.*).

Franks refused to provide identifying information, denied wrongdoing, and challenged Fenwick's demands. (*Id.* ¶ 16(b), PageID 115, ¶¶ 56–60, PageID 120). He threatened no one and used no fighting words. (*Id.* ¶¶ 61–62, PageID 120). Fenwick responded by escalating the encounter to an arrest and felony prosecution. (*Id.* ¶¶ 63–64).

Fenwick acknowledged his unfamiliarity with the situation, telling another person that he had a "quick question" about an "interesting situation" he had "literally never" encountered. (*Id.* ¶ 65). He sought advice about how far he could go in compelling Franks to identify himself, whether he could impound the bicycle, and what charge he could file. (*Id.* ¶¶ 66–68). Fenwick later reported that Sergeants Bobby Lewis and Dean Sturgeon

had conferred and believed another officer should be present when he told Franks to provide his information or go to jail. (*Id.* ¶¶ 70–72, PageID 121).

Fenwick's search for charges continued: "What charges do you think I ought to go with on this?" (*Id.* ¶ 75). He described the device to Lewis as electric, resembling a scooter or bicycle, with a small motor and a folding frame. (*Id.* ¶¶ 16(d)–(e), PageID 115–116). Lewis recommended no operator's license, no insurance, and no registration, and Fenwick filed those same charges. (*Id.* ¶¶ 16(f)–(h), PageID 116).

Fenwick charged Franks under the autocycle licensing statute even though Franks had not operated an autocycle. (*Id.* ¶¶ 32–36, PageID 118). He charged an owner's insurance offense without facts showing that Franks owned a covered motor vehicle subject to that requirement. (*Id.* ¶¶ 38–41). He charged a registration-plate offense without facts showing that the bicycle required Kentucky registration plates. (*Id.* ¶¶ 42–44, PageID 119). He also turned the accident into a first-degree criminal-mischief charge without facts supporting intentional or wanton property damage or reliable evidence establishing the required loss. (*Id.* ¶¶ 49–53).

The charges carried immediate consequences. (*Id.* ¶ 9, PageID 114). At Franks's August 14 arraignment, the court set a $2,500 cash bond, denied bail credit, and prohibited him from driving. (*Id.* ¶¶ 83–87, PageID 122). Franks could not afford his release and remained jailed until August 21, when the court released him on his own recognizance. (*Id.* ¶¶ 88–89). The Commonwealth produced no evidence supporting any charge. (*Id.* ¶ 9, PageID 114). At the October 3 preliminary hearing, the court dismissed all four charges without prejudice, and the prosecution ended without a conviction. (*Id.* ¶¶ 91–93, PageID 122).

Metro had received governmental notice of deficiencies in street enforcement, supervision, and officer accountability before Franks's arrest. (*Id.* ¶¶ 277–279, PageID 143). Yet its training, legal guidance, and supervisory procedures failed to prevent multiple LMPD personnel from selecting and filing charges unsupported by the known facts. (*Id.* ¶¶ 293–298, PageID 145).

## III. STANDARD OF REVIEW

The Court must accept well-pleaded facts as true and draw reasonable inferences in Franks's favor. *Akima v. Peca*, 85 F.4th 416, 422 (6th Cir. 2023). Those facts must support a plausible claim, but Franks need not prove his case at the pleading stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). The Court may consider video referenced in the complaint and central to the claims, but the footage displaces pleaded facts only where it clearly "blatantly contradict[s]" or "utterly discredit[s]" them. *Bell v. City of Southfield*, 37 F.4th 362, 364 (6th Cir. 2022). Otherwise, the pleaded account controls. *Id.* Defendants' competing interpretation is insufficient, and gaps or ambiguities do not permit inferences against Franks. *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1002–03 (6th Cir. 2024). The same pleading standard governs qualified immunity. *Id.*

## IV. ARGUMENT

### A. The pleaded facts do not establish probable cause for the charges Fenwick filed or the alternative offenses Defendants now invoke.

Probable cause requires a probability or substantial chance of criminal activity under the totality of the circumstances, not proof beyond a reasonable doubt. *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018). At this stage, Franks must plausibly allege that his arrest lacked probable cause. *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015). The complaint identifies the statutory requirements and the facts Fenwick lacked.

Defendants confuse the standard for arrest with the standard for federal malicious prosecution. They assert that "[t]he existence of probable cause of a related offense will excuse a lack of probable cause for other offenses charged." (Doc. 22, PageID 180). That arrest rule does not provide a categorical defense to malicious prosecution. *Chiaverini v. City of Napoleon*, 602 U.S. 556, 561–64 (2024). Even if another offense justified arrest (which it does not on the pleaded facts), it would not automatically defeat Franks's claim that the unsupported felony criminal-mischief charge caused his continued detention. *Id.*

The following analysis addresses each charge Fenwick filed and the alternative grounds Defendants now advance.

**1. The autocycle statute does not apply to Franks's two-wheeled bicycle.**

Fenwick charged Franks with operating an autocycle without a driver's license under KRS 189.288(1). (Doc. 13, ¶ 32, PageID 118). Defendants concede that the autocycle definition "would not apply to Plaintiff's electric bicycle." (Doc. 22, PageID 179).[1] That concession follows the statute, which requires three wheels, a seat the operator does not straddle, a three-point safety-belt system, and steering-wheel control. KRS 189.288(1); KRS 186.010(19).[2] Franks's bicycle had two wheels, handlebars, and a bicycle seat, and lacked the defining autocycle features. (Doc. 13, ¶¶ 26–36, PageID 117–18).

[1] That concession defeats Defendants' claim of probable cause under the autocycle statute. Probable cause is **charge-specific** for federal malicious prosecution. Defendants cannot excuse an unsupported autocycle charge that caused detention by pointing to a different offense. *Chiaverini*, 602 U.S. at 561–64.

[2] KRS 189.288 governs the operation, insurance, titling, and registration of autocycles. KRS 186.010 supplies definitions for Kentucky's motor-vehicle licensing statutes, including "autocycle" in subsection (19). Because KRS 189.288(1) expressly incorporates that definition, the Court should read the provisions together to determine whether the vehicle falls within the charged statute.

The mismatch is obvious and undisputed.[3] Fenwick charged Franks under a statute governing a vehicle he was not operating. Defendants therefore cannot establish probable cause under the autocycle statute. Their proposed substitute requires a separate analysis.

**2. Defendants' alternative motorcycle theory does not establish probable cause merely by identifying another statute.**

Defendants now invoke KRS 189.285 to justify charging Franks with operating without the required driver's license. They argue that his bicycle qualified as a motorcycle and that Fenwick's citation to the autocycle statute "does not invalidate the charge of driving without an operator's license." (Doc. 22, PageID 179–80). But identifying another statute does not establish that the facts known to Fenwick supported a violation.

An arrest may rest on probable cause for an offense the officer did not identify. The alternative justification, however, must rest on facts known when the arrest occurred. *Devenpeck v. Alford*, 543 U.S. 146, 152–55 (2004). Defendants may offer a different legal theory now. They cannot supply missing knowledge after the arrest.

KRS 189.285(1)(a) requires a valid motorcycle operator's license to operate a motorcycle on a highway. Subsection (6)(a) defines a motorcycle as a motor-driven vehicle with an operator's seat or saddle, designed to travel on no more than three wheels, subject to specified exclusions.

One exclusion is a moped. KRS 189.285(6)(b), an admittedly poorly written subsection, describes two bicycle configurations. The first is a motorized bicycle with pedals, whose frame may include crossbars supporting a fuel tank. The second is a

[3] An officer "can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce." *Heien v. North Carolina*, 574 U.S. 54, 67 (2014). Meaning, Fenwick cannot turn that obvious statutory mismatch into a reasonable mistake simply by invoking qualified immunity.

motorized bicycle with a step-through frame, with or without pedals. The first configuration is relevant because Franks's bicycle had pedals. (Doc. 13, ¶ 26, PageID 117). That configuration does not expressly require a fuel tank.

The two configurations differ in when pedals are required. Under the first, a motorized bicycle must have pedals but need not have a step-through frame. Under the second, pedals are optional, but the bicycle must have a step-through frame. Thus, a vehicle lacking both pedals and a step-through frame fits neither configuration. KRS 189.285(6)(b).

The subsection then lists four technical requirements: (1) no more than two brake horsepower, (2) a cylinder capacity no greater than fifty cubic centimeters, (3) an automatic transmission requiring no clutching or shifting after engagement, and (4) a maximum speed no greater than thirty miles per hour. KRS 189.285(6)(b).

Defendants argue that Franks's bicycle falls outside the moped exclusion because it lacked pedals and could exceed thirty miles per hour. (Doc. 22, PageID 177). The first assertion contradicts the operative complaint, which expressly identifies pedals among the bicycle's features. (Doc. 13, ¶ 26, PageID 117). The second relies on the original complaint's allegation of an approximately thirty-two-mile-per-hour maximum, not the allegations of the Second Amended Complaint. (Doc. 22, PageID 177).

The Second Amended Complaint superseded the original pleading. See *Hayward v. Cleveland Clinic Foundation*, 759 F.3d 601, 617 (6th Cir. 2014). It does not allege a precise maximum speed. (Doc. 13, ¶¶ 23–28, PageID 117). Defendants should not be permitted to import the omitted allegation as a binding admission to obtain dismissal. The Third Circuit addressed that distinction directly in *West Run Student Housing Associates, LLC v. Huntington National Bank*, holding that superseded allegations may

remain rebuttable evidence at summary judgment but do not bind the plaintiff on a motion to dismiss the amended complaint. 712 F.3d 165, 171–73 (3d Cir. 2013).

Even accepting the earlier speed allegation, Defendants still must connect it to Fenwick's knowledge before the arrest. The bicycle's actual capability and the officer's knowledge of that capability are different questions. An allegation made after the encounter does not establish what Fenwick knew at the scene. *Devenpeck* permits an alternative legal justification based on the facts known when the arrest occurred. It does not permit later-acquired facts to supply missing probable cause. *Devenpeck v. Alford*, 543 U.S. 146, 152–53 (2004).

The pleaded facts make that distinction material. Fenwick encountered a folding electric bicycle with pedals, handlebars, and a bicycle seat. (Doc. 13, ¶¶ 23–28, PageID 117). He described an unfamiliar scooter, sought guidance about compelling identification, and acknowledged that operating a scooter did not require a driver's license. (*Id.* ¶¶ 65–74, PageID 120–21). His legal conclusion does not control. But Defendants identify no information establishing that he knew the bicycle exceeded the moped speed limit before arresting Franks. Nor do a motor, two wheels, and a seat alone distinguish a motorcycle from an excluded moped.

Franks does not demand mechanical testing or certainty before arrest. He demands a reasonable factual basis for the offense. An officer generally need not investigate further once probable cause exists. *Ahlers v. Schebil*, 188 F.3d 365, 371–72 (6th Cir. 1999). That rule does not excuse an arrest before probable cause exists. *Wesley v. Campbell*, 779 F.3d 421, 434 (6th Cir. 2015). Further inquiry may be necessary when the initial information supports suspicion but not probable cause. *Gardenhire v. Schubert*, 205 F.3d 303, 317 (6th Cir. 2000).

Defendants have identified another statute, not established probable cause under it. Their motorcycle theory still requires facts known before the arrest that reasonably supported treating Franks's bicycle as a motorcycle rather than an excluded moped. The earlier speed allegation does not, by itself, supply that missing connection. The question is what Fenwick knew when he arrested Franks, not what Defendants learned afterward.

**3. A collision and resulting damage do not alone establish first-degree criminal mischief.**

Fenwick also charged Franks with first-degree criminal mischief. (Doc. 13, ¶ 49, PageID 119). Defendants justify that charge by pointing to the collision and resulting damage. (Doc. 22, PageID 180–81). But the statute requires more than a damaged vehicle. It requires intentional or wanton property damage causing at least $500 in loss, without a right or reasonable ground to believe one has that right. KRS 512.020(1)(a). The amount of damage cannot supply the missing mental state.

Wantonness requires awareness and conscious disregard of a substantial and unjustifiable risk, constituting a gross departure from reasonable conduct. KRS 501.020(3). Failing to perceive a risk is different from consciously disregarding it. *Robertson v. Commonwealth*, 82 S.W.3d 832, 835 (Ky. 2002). Franks alleges that Fenwick lacked facts showing either intentional or wanton damage. (Doc. 13, ¶¶ 51–52, PageID 119). Defendants must explain what supported a reasonable inference of criminal conduct, not simply identify who caused the accident.

Persuasive collision cases recognize that distinction. In *Loria v. Gorman*, an officer relied on the other driver's account, an inspection of the vehicles, and another officer's report to support charges of criminal mischief and reckless endangerment. 306 F.3d 1271, 1291–93 (2d Cir. 2002). That information did not reasonably establish "more than a

simple traffic accident," and the court affirmed the denial of qualified immunity. *Id.* Similarly, *Mack v. Town of Wallkill* rejected qualified immunity where the plaintiff's account of a vehicle collision supplied no reasonable basis to believe she intentionally damaged a police car. 253 F. Supp. 2d 552, 560–61 (S.D.N.Y. 2003). These cases illustrate the relevant distinction. Evidence of a collision does not automatically establish the culpability required for a criminal charge.

Metro asserts that Franks entered the intersection against a red light at speed. (Doc. 23, PageID 187). That assertion does not resolve whether he consciously disregarded a substantial risk or failed to perceive it. Nor does describing the recording resolve every inference the recording permits. The Court must distinguish what the footage establishes from what Defendants ask it to infer. Franks need not accept Defendants' inference of wantonness merely because they present it alongside a video. See *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1002–03 (6th Cir. 2024).

Defendants' reliance on *Helton* overlooks the investigation supporting probable cause there. *Helton v. Whitley County Fiscal Court*, No. 6:22-CV-140-CHB, 2025 U.S. Dist. LEXIS 2327, at *21–24 (E.D. Ky. Jan. 7, 2025). The officer testified that the plaintiff admitted removing two mailboxes, measured their location, consulted the post office to confirm they were within the right of way, photographed the scene, and estimated the damage before obtaining an arrest warrant. *Id.* Those facts supported a reasonable belief that the plaintiff had deliberately removed property he had no right to disturb. *Id.* at *23–24. *Helton* rests on evidence of deliberate removal and an investigation into the plaintiff's claimed right to act, not an inference that property damage alone establishes criminal mischief. *Id.* at *21–24.

The question is whether Fenwick had a reasonable basis to believe Franks committed a crime, not merely caused a collision. Franks alleges that Fenwick lacked facts supporting intentional or wanton damage. Defendants cannot defeat that claim at the pleading stage by treating their inference of conscious disregard as an established fact.

#### 4. The insurance charge required a reasonable basis to believe Franks's bicycle was subject to compulsory coverage.

Fenwick charged Franks with failure of an owner to maintain required insurance. (Doc. 13, ¶¶ 38–41, PageID 118). KRS 304.39-080(5) requires continuous security for covered motor vehicles registered in Kentucky or operated here with the owner's permission, and KRS 304.99-060(1) penalizes an owner's failure to maintain that security. KRS 304.39-080(5); KRS 304.99-060(1). The Act expressly excludes qualifying mopeds and electric low-speed scooters from its definition of a motor vehicle. KRS 304.39-020(7)–(8).

Defendants argue that Franks's bicycle fell within the Act and outside those exclusions. (Doc. 22, PageID 176–78). Their argument rests partly on the assertion that the bicycle lacked pedals, contrary to the complaint's express description. (Doc. 22, PageID 177; Doc. 13, ¶ 26, PageID 117). The remaining moped requirements and Defendants' reliance on the later-alleged 32-mph capability are addressed above. See § A.2, *supra*. The insurance definition contains no 50-mph threshold, but its 30-mph moped limit still must be applied through the facts known to Fenwick when he arrested Franks. *Devenpeck v. Alford*, 543 U.S. 146, 152–53 (2004).

Franks alleges that Fenwick lacked facts establishing that this bicycle was a covered motor vehicle required to carry insurance. (Doc. 13, ¶¶ 40–41, PageID 118). Defendants cannot cure that alleged deficiency merely by identifying an electric motor because the Act itself excludes some motorized devices. KRS 304.39-020(7)–(8). The charge required a reasonable basis to believe Franks lacked **required** coverage, which turns first on whether the known facts brought his bicycle within the statute.

**5. The missing-plate charge depends on whether Franks's bicycle required registration.**

Fenwick charged Franks with no or expired registration plates under KRS 186.170. (Doc. 13, ¶ 42, PageID 119). Franks alleges that Fenwick lacked facts establishing that his bicycle was required to display Kentucky registration plates. (*Id.* ¶ 44).

The statutes in effect at the time imposed registration and plate-display requirements on covered motor vehicles. KRS 186.020(1) (2025); KRS 186.170(1) (2025). For registration purposes, "motor vehicle" generally included highway-transportation devices propelled otherwise than by muscular power, but expressly excluded qualifying mopeds. KRS 186.010(4)–(5), (8)(a) (2025). Kentucky separately exempted qualifying mopeds and electric low-speed scooters from obtaining registration certificates, plates, or titles. KRS 186A.080(9)–(10) (2025).

Franks's bicycle had pedals as well as an electric motor. (Doc. 13, ¶ 26, PageID 117). Pedals alone do not establish an exemption, but the moped definition expressly contemplates motorized bicycles with pedals, making the motor's presence insufficient by itself to resolve whether registration was required. KRS 186.010(4)–(5) (2025). The remaining moped requirements and the facts known to Fenwick are addressed above. See § A.2, *supra*.

Defendants describe the offense as operating "without proof of registration" while elsewhere arguing that the bicycle qualified as a motorcycle. (Doc. 22, PageID 178–80). Yet KRS 186.170(1) excepts motorcycles from keeping the registration receipt in the vehicle, although it still requires plate display. KRS 186.170(1) (2025). Their paperwork argument therefore does not resolve the pleaded plate charge or whether the bicycle was exempt. (Doc. 13, ¶ 42, PageID 119). KRS 186A.080(9)–(10) (2025).

Defendants also point to the absence of visible registration tags. (Doc. 22, PageID 182). But an exempt bicycle needs no plate, so the absence of one cannot itself establish that registration was required. KRS 186A.080(9)–(10) (2025). Probable cause depended on facts known to Fenwick that reasonably brought this bicycle within the registration requirement, not merely his observation of a motor and a missing plate. KRS 186.010(4)–(5) (2025). *Devenpeck v. Alford*, 543 U.S. 146, 152–53 (2004).

**B. Count II states a federal malicious-prosecution claim that must be evaluated <u>charge by charge</u>.**

Count II challenges the prosecution and resulting confinement under legal process. (Doc. 13, ¶¶ 134–151, PageID 128–29). A federal malicious-prosecution claim requires that a defendant made, influenced, or participated in the decision to prosecute, that the prosecution lacked probable cause, that the proceedings caused a deprivation of liberty beyond the initial arrest, and that the proceedings ended in the plaintiff's favor. *Alford v. Deffendoll*, 165 F.4th 490, 499–500 (6th Cir. 2026). Favorable termination requires that the prosecution ended without a conviction, not an affirmative finding of innocence. *Thompson v. Clark*, 596 U.S. 36, 49 (2022).

Probable cause must be evaluated **charge by charge** because a supported charge does not categorically defeat a Fourth Amendment malicious-prosecution claim based on another, unsupported charge. *Chiaverini v. City of Napoleon*, 602 U.S. 556, 561–64 (2024). Franks must still establish that the unsupported charge caused an unreasonable seizure, so the inquiry includes the effect of that charge on his detention. *Id.* at 564–65.

The complaint identifies the officers' participation in selecting and initiating the charges, the alleged absence of probable cause for each offense, the resulting confinement, and the dismissal of all four charges without a conviction. The analysis therefore turns to each officer's participation, the challenged charges and their effect on Franks's confinement, and the termination of the prosecution.

**1. Probable cause for one offense does not defeat a malicious-prosecution claim arising from another.**

Defendants concede that the autocycle statute did not apply, then invoke the motorcycle statute to save the licensing charge. (Doc. 22, PageID 179–80). They rely on *Smith v. Peyman* to argue that probable cause for one offense excuses its absence for another. (Doc. 22, PageID 180). But that is not the standard for malicious prosecution.

For malicious prosecution, probable cause for one charge does not excuse another unsupported charge that caused detention. *Chiaverini v. City of Napoleon*, 602 U.S. 556, 561–64 (2024). Courts "must analyze probable cause charge-by-charge," based on the facts known when the defendant participated in the prosecution. *Alford v. Deffendoll*, 165 F.4th 490, 500 (6th Cir. 2026).

As explained in Section A, Franks identifies why each charge lacked probable cause and alleges that the unsupported charges caused his continued confinement. Even if Defendants establish probable cause for an licensing offense, that would not supply probable cause for criminal mischief. *Chiaverini*, 602 U.S. at 561–64. The Court must still determine whether an unsupported charge caused Franks's detention, rather than dismiss Count II because another offense justified his arrest.

**2. The complaint identifies each officer's participation.**

An officer need not make the final prosecutorial decision to be liable for helping initiate the prosecution. *Sykes v. Anderson*, 625 F.3d 294, 311–12 (6th Cir. 2010). Participation requires actively aiding that decision, rather than merely passing along information in a passive or neutral role. *Id.* at 308 n.5. "Whether an officer influenced or participated in the decision to prosecute hinges on the degree of the officer's involvement and the nature of the officer's actions." *Id. at 311* n.9 (6th Cir. 2010).

Fenwick selected all four charges, issued the citations, caused the felony case to be opened, and caused Franks to be held under legal process. (Doc. 13, ¶¶ 136–142, PageID 128). His role was direct, initiating the charges rather than merely reporting the encounter for someone else to evaluate. (*Id.*, ¶ 137).

Lewis identified the licensing, insurance, and registration charges after Fenwick described the device as electric and resembling a scooter or bicycle with a small motor. (Doc. 13, ¶¶ 139–140, PageID 128). Fenwick accepted that advice and filed those charges. (*Id.*, ¶ 141). Lewis's participation rests on his specific charging advice and its adoption, not his supervisory title. (*Id.*, ¶¶ 139–141).

Sturgeon participated in the consultation about requiring Franks to provide identifying information under threat of arrest. (Doc. 13, ¶ 17(a)–(b), PageID 116). Fenwick reported that Sturgeon and Lewis wanted another officer present when he delivered that ultimatum. (*Id.*, ¶¶ 70–72, PageID 121). Although the complaint attributes the specific vehicle-charge recommendations to Lewis, it alleges that Sturgeon advised, authorized, or approved the decision to arrest Franks and initiate criminal proceedings. (*Id.*, ¶¶ 138–141, PageID 128).

These allegations identify each officer's role in setting the proceedings in motion and support participation beyond mere presence or supervisory status.

**3. Franks alleges that the unsupported charges kept him jailed after arraignment.**

The Fourth Amendment protects against detention without probable cause even after legal process begins. *Manuel v. City of Joliet*, 580 U.S. 357, 364–69 (2017). A malicious-prosecution claim therefore requires a deprivation of liberty beyond the initial arrest and a causal connection between that deprivation and an unsupported charge. *Alford v. Deffendoll*, 165 F.4th 490, 499–500 (6th Cir. 2026).

Franks identifies a week of incarceration after arraignment, not merely the initial arrest. (Doc. 13, ¶¶ 83–89, PageID 122). On August 14, 2025, the court imposed a $2,500 cash bond, denied bail credit, and prohibited him from driving. (*Id.*, ¶¶ 83–87). Unable to afford the bond, Franks remained jailed until August 21, when the court released him on his own recognizance. (*Id.*, ¶¶ 88–89). That continued incarceration satisfies the requirement of a deprivation of liberty beyond the initial arrest. See *Manuel*, 580 U.S. at 364–69.

The complaint ties that confinement to Fenwick's unsupported charges, which initiated the felony proceeding and caused Franks to be held under legal process. (Doc. 13, ¶¶ 137, 143–150, PageID 128–29). Even if a vehicle-related charge was supported, the Court must still consider whether the unsupported criminal-mischief charge caused or prolonged the detention. *Chiaverini v. City of Napoleon*, 602 U.S. 556, 562–65 (2024). The alleged felony prosecution, unaffordable cash bond, and ensuing week in jail support that inference at the pleading stage. (Doc. 13, ¶¶ 83–89, PageID 122, ¶¶ 137, 146, 150, PageID 128–29).

**4. Later decisions by prosecutors and courts do not automatically sever causation.**

Metro argues that the courts controlled detention, the Commonwealth controlled prosecution, and no Metro official participated after Franks's arrest. (Doc. 6, PageID 48–49, incorporated by Doc. 23, PageID 195). But an officer can cause prosecution and continued detention through his earlier conduct, even when other officials make the later decisions. *Sykes v. Anderson*, 625 F.3d 294, 315–17 (6th Cir. 2010). A judge's approval likewise does not necessarily break the causal connection between an officer's deficient warrant application and the resulting seizure. *Malley v. Briggs*, 475 U.S. 335, 344 n.7 (1986). Defendants cannot defeat that causal theory merely by identifying the officials who later prosecuted the charges or set bond.

**5. Dismissal without prejudice can satisfy federal favorable termination.**

A plaintiff need not obtain an acquittal or prove that the dismissal established his innocence, only that the prosecution ended without a conviction. *Thompson v. Clark*, 596 U.S. 36, 49 (2022). Dismissal without prejudice does not categorically defeat that showing. *Brown v. Louisville-Jefferson County Metro Government*, 135 F.4th 1022,

1031–32 (6th Cir. 2025). Franks pleads precisely that result, alleging that all four charges were dismissed on October 3, 2025, and the prosecution ended without a conviction. (Doc. 13, ¶¶ 91–93, PageID 122, ¶ 151, PageID 129).

### C. Count IV plausibly alleges false arrest and false imprisonment under the Fourth Amendment.

Count IV challenges Franks's arrest and detention before legal process began. (Doc. 13, ¶¶ 162–175, PageID 130–31). Franks must plausibly allege an arrest without probable cause, with reasonable factual inferences drawn in his favor. *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015); *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Argument A addresses the statutory defects in the four charged offenses, which Count IV incorporates as grounds for challenging the arrest.

Defendants concede that the autocycle statute did not apply, but argue that Fenwick could lawfully arrest Franks for operating a motorcycle without the required license under a different statute, KRS 189.285. (Doc. 22, PageID 179–80). An uncharged offense can justify an arrest, but only if the facts known when the arrest occurred supplied probable cause for that offense. *Devenpeck v. Alford*, 543 U.S. 146, 152–55 (2004). That requires reasonably trustworthy information supporting a prudent person's belief that the offense occurred. *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

As explained in Argument A, the motorcycle theory requires applying the statutory definition and its moped exclusion. A qualifying moped falls outside the motorcycle-license requirement. KRS 189.285(1)(a), (6)(a)–(b). Its operator generally must still have an operator's license to ride on a highway. KRS 186.410(1). The question therefore remains whether the facts known to Fenwick supported a reasonable belief that Franks lacked a license required to operate this bicycle. *Devenpeck*, 543 U.S. at 152–55.

The recording does not conclusively establish that Franks admitted having no valid license. (Doc. 23, Ex. 1, at 00:02:03–00:03:22). Fenwick asked whether he had "a driver's license or anything like that or an ID," and Franks answered, "No." (*Id.*, at 00:02:03–00:02:15). Fenwick then explained that a license would make obtaining Franks's information easier and that Franks did not need one to operate the scooter. (*Id.*, at 00:03:11–00:03:22). Read together, those statements permit an inference that Franks lacked an identification document to present, rather than that no valid license had been issued. (*Id.*, at 00:02:03–00:03:22).

Defendants' reliance on *Hoover* raises the separate issue of failing to carry or produce a license. (Doc. 22, PageID 182). *Hoover* found probable cause under a Michigan statute requiring a driver to possess and produce a license. *Hoover v. Walsh*, 682 F.3d 481, 499–500 (6th Cir. 2012). Kentucky's corresponding statute requires a licensee driving a motor vehicle to carry a license and display it upon demand. KRS 186.510. But Chapter 186's definition of "motor vehicle" expressly excludes qualifying mopeds. KRS 186.010(4)–(5). The moped issue therefore also matters to this alternative, and *Hoover* does not resolve whether Kentucky's possession-and-display requirement covered Franks's bicycle. KRS 186.010(4)–(5). KRS 186.510.

Defendants also rely on Franks's refusal to provide identifying information for the collision report. (Doc. 22, PageID 182, Doc. 23, PageID 188). Kentucky is not a general "stop and identify" jurisdiction, so that refusal must be tied to an applicable statutory duty. *Kavanaugh v. Commonwealth*, 427 S.W.3d 178, 181 (Ky. 2014). The accident statute requires an operator, upon request, to provide specified information to the **other vehicle's occupant** or the person struck. KRS 189.580(1)(a). Its separate requirement

that the investigating officer prepare a report does not itself create an offense of refusing to answer the officer's questions. KRS 189.580(6)(b). *Kavanaugh*, 427 S.W.3d at 181.

Finally, Defendants invoke Kentucky's citation statute to justify arrest rather than issuance of a citation. (Doc. 22, PageID 182). Subsection (1)(b) permits custodial arrest for a misdemeanor committed in an officer's presence under specified circumstances, including refusal to follow reasonable instructions, but creates no independent offense of refusing instructions. KRS 431.015(1)(b). Franks's federal claim challenges the absence of probable cause for an offense, not merely a violation of Kentucky's citation procedures.

As discussed above, Fenwick carried out the arrest, while Lewis and Sturgeon participated in the preceding consultation about demanding identifying information under threat of arrest.

**D. Count I plausibly alleges that Fenwick used arrest and criminal charges to retaliate against Franks's protected criticism.**

The individual Defendants argue that probable cause for the citations and arrest defeats Count I. (Doc. 22, PageID 183). Metro separately contends that the recordings discredit Franks's allegations that Fenwick used criminal charges to punish his criticism. (Doc. 23, PageID 192–93). Count I challenges both the arrest and Fenwick's initiation of the prosecution. (Doc. 13, ¶¶ 125–130, PageID 126–27).

First Amendment retaliation requires protected speech, an adverse action that would deter a person of ordinary firmness from continuing to speak, and speech that substantially motivated the adverse action. *Wood v. Eubanks*, 25 F.4th 414, 428 (6th Cir. 2022). The retaliatory motive must ultimately be a but-for cause of the injury. *Nieves v. Bartlett*, 587 U.S. 391, 398–99 (2019). Retaliatory arrest generally also requires the absence of probable cause, subject to the exception addressed below. *Id.* at 402, 407.

Retaliatory prosecution requires the absence of probable cause and a showing that the officer induced a prosecution that would not have occurred without his retaliatory conduct. *Hartman v. Moore*, 547 U.S. 250, 262–66 (2006).

Franks alleges that Fenwick arrested him and pursued unsupported charges because he questioned Fenwick's demands and challenged the accusations. (Doc. 13, ¶¶ 125–130, PageID 126–27). He further alleges that Fenwick would not have arrested, jailed, or charged him in the same way had he not spoken back. (*Id.*, ¶ 128, PageID 127).

**1. Franks's questions and challenges were protected speech, and arrest and prosecution were adverse actions.**

The First Amendment protects verbal challenges to police authority. *City of Houston v. Hill*, 482 U.S. 451, 461–63 (1987). Applying that principle, the Sixth Circuit has recognized that "nonaggressive questioning of police officers is constitutionally protected conduct." *Patrizi v. Huff*, 690 F.3d 459, 466–67 (6th Cir. 2012). Franks asked what Fenwick's demands concerned and whether compliance was required. (Doc. 23, Ex. 1, at 00:02:22–00:02:47). He disputed the accusations and questioned their legal basis without threatening anyone or using fighting words. (Doc. 13, ¶¶ 56–62, PageID 120). Those questions and objections fall within the protection recognized in *Hill* and *Patrizi*.

Metro's own account places Franks's later response in context. (Doc. 23, PageID 188–89). Fenwick first threatened arrest on "various charges that I'm not even mentioning right now." (*Id.*, PageID 188). Franks questioned that threat, then responded, "all the charges you can think of, let's go ahead and do it," while expressly stating, "I'm not resisting." (*Id.*, PageID 189).

The resulting arrest, felony prosecution, and incarceration also satisfy the adverse-action requirement because they would deter a person of ordinary firmness from continuing to challenge an officer. See *Wood v. Eubanks*, 25 F.4th 414, 428–29 (6th Cir. 2022). Fenwick arrested Franks and initiated the criminal proceedings, and Franks remained jailed until August 21 because he could not afford the $2,500 cash bond. (Doc. 13, ¶ 126, PageID 127, ¶ 137, PageID 128, ¶¶ 83–89, PageID 122).

**2. Fenwick's statements and charging decisions support a plausible inference of retaliation.**

Franks must plausibly allege that his protected criticism was a but-for cause of the challenged action. *Nieves v. Bartlett*, 587 U.S. 391, 398–99 (2019). Facts supporting the absence of probable cause, combined with close timing between protected criticism and efforts to initiate prosecution, can plausibly establish retaliatory causation at the pleading stage. *Blackwell v. Nocerini*, 123 F.4th 479, 490 (6th Cir. 2024).

That is the sequence pleaded here. (Doc. 13, ¶¶ 56–80, PageID 120–21). Franks questioned Fenwick's demands and disputed the threatened charges, and Fenwick escalated the encounter to arrest and prosecution. (*Id.*, ¶¶ 56–64, PageID 120). Metro's own account quotes Fenwick offering to let Franks go home if he provided information, then threatening arrest on "various charges that I'm not even mentioning right now" if he refused. (Doc. 23, PageID 188). Fenwick later asked, "What charges do you think I ought to go with on this?" and filed the recommended vehicle charges. (Doc. 13, ¶¶ 75–80, PageID 121). Franks identifies the defects in those charges, addressed in Argument A, and alleges that Fenwick would not have pursued the same arrest and prosecution without his criticism. (*Id.*, ¶¶ 26–55, PageID 117–20, ¶¶ 127–130, PageID 127). Together, the

criticism, threatened escalation, and allegedly unsupported charges support an inference of retaliation under *Blackwell*. 123 F.4th at 490–91.

Metro's description of Fenwick as professional does not resolve that inference. (Doc. 23, PageID 189, 192). The question is whether Franks's criticism caused the challenged enforcement decisions, not whether Fenwick delivered his ultimatum courteously. The recording can defeat allegations it blatantly contradicts, but Metro cannot obtain dismissal merely by asking the Court to adopt its preferred explanation of the encounter. *Hodges v. City of Grand Rapids*, 139 F.4th 495, 506–10 (6th Cir. 2025).

**3. The Court should distinguish the arrest from the allegedly retaliatory charges.**

Defendants argue that probable cause for the citations and arrest defeats Count I. (Doc. 22, PageID 183). But Count I challenges the arrest, the criminal citations, and Fenwick's role in initiating the felony prosecution. (Doc. 13, ¶¶ 125–130, PageID 126–27). Those actions require the applicable analysis because *Nieves* governs criminal citations, while *Hartman v. Moore* governs the ensuing prosecution. *Fambrough v. City of East Cleveland*, No. 25-3300, 2026 U.S. App. LEXIS 30136 at 15–17 (6th Cir. Oct. 1, 2026).

Probable cause generally defeats retaliatory arrest, including when an offense different from the stated grounds supplies the justification. *Nieves v. Bartlett*, 587 U.S. 391, 405–07 (2019); *Hartman v. Thompson*, 931 F.3d 471, 481–82, 484–85 (6th Cir. 2019). Franks disputes the grounds for arrest as explained in Sections A and C and alternatively invokes the *Nieves* exception, alleging that officers ordinarily handle traffic accidents and minor vehicle violations without custodial arrest. (Doc. 13, ¶¶ 23–55, PageID 117–20, ¶ 131, PageID 127). That exception requires objective support for different

treatment, but not identification of a virtually identical person who avoided arrest. *Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024).

For retaliatory prosecution, Franks must plausibly allege that probable cause was absent and that Fenwick's retaliatory conduct induced the prosecution. *Hartman v. Moore*, 547 U.S. 250, 261–66 (2006); *Blackwell v. Nocerini*, 123 F.4th 479, 488–90 (6th Cir. 2024). Fenwick selected the charges, issued the citations, and caused the felony case to be opened. (Doc. 13, ¶¶ 136–142, PageID 128). Franks alleges that those charges lacked probable cause and would not have been filed in the same way without his protected criticism. (*Id.*, ¶¶ 125–130, PageID 126–27).

*Fambrough* questioned whether probable cause for a lesser offense could excuse a citation for a different offense carrying greater penalties, although it did not resolve that unraised defense. 2026 U.S. App. LEXIS 30136 at 23 n.7. That reasoning supports Franks's argument that a possible traffic offense does not resolve his challenge to the unsupported felony charge. See *id*. Franks alleges that Fenwick responded to his criticism with threats of jail, sought charges to file, and initiated a felony prosecution without facts supporting intentional or wanton damage. The Court should deny dismissal of Count I's retaliatory-prosecution theory because those facts plausibly show that Fenwick pursued unsupported charges to punish protected criticism.

**E. Qualified immunity does not warrant dismissal of the individual-capacity federal claims.**

Defendants seek qualified immunity because Franks supposedly cannot identify precedent establishing that their conduct was unlawful. (Doc. 22, PageID 173–75). Qualified immunity protects government officials "when their actions do not violate a clearly established constitutional or statutory right that a reasonable person would have known when acting in the course of their professional duties." *Hamm v. Golden*, No. 1:23-CV-00079-GNS, 2025 U.S. Dist. LEXIS 38435 (W.D. Ky. Mar. 4, 2025). Courts apply a two-step analysis: (1) do the alleged facts show a constitutional violation, and (2) was the right clearly established? *Seales v. City of Detroit*, 724 F. App'x 356, 361 (6th Cir. 2018).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 121 S. Ct. 2151 (2001). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Seales v. City of Detroit,* 724 F. App'x 356 (6th Cir. 2018)(citations omitted). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.*

**1. Qualified immunity must be evaluated under the pleading standard.**

The Sixth Circuit has explained that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015). Its factual demands make qualified immunity "often a bad fit" for dismissal on the pleadings. *Siefert v. Hamilton County*, 951 F.3d 753, 761 (6th Cir. 2020). At this stage, Franks must plausibly allege a violation of clearly established law, with well-pleaded facts accepted as true and reasonable inferences drawn in his favor.

Dismissal remains available when entitlement to immunity appears on the face of the complaint, but determining whether the law clearly prohibited the alleged conduct may require factual development. *Crawford v. Tilley*, 15 F.4th 752, 763–65 (6th Cir. 2021). The question is whether Franks plausibly alleges a violation of clearly established rights, not whether he has already proved his case. *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

**2. Preexisting decisions gave fair notice of the alleged violations.**

Defendants demand an "on-point, binding case" establishing that their conduct was unlawful. (Doc. 22, PageID 174). Yet, the Supreme Court does not require "a case directly on point," although existing precedent must place the unlawfulness of the particular conduct "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). In an "obvious case," the unlawfulness can be sufficiently clear even without precedent addressing similar circumstances. *District of Columbia v. Wesby*, 583 U.S. 48, 63–64 (2018)

Count IV alleges federal false arrest and imprisonment. "The constitutional right to 'freedom from arrest in the absence of probable cause' is clearly established within our circuit." *Courtright v. City of Battle Creek*, 839 F.3d 513, 520 (6th Cir. 2016). In *Hart*, the Sixth Circuit affirmed denial of qualified immunity where officers allegedly arrested and prosecuted a man under registration requirements that did not apply, relying on information they had reason to question. *Hart v. Hillsdale County*, 973 F.3d 627, 637–43 (6th Cir. 2020). Franks likewise identifies the bicycle's visible characteristics and the information communicated before officers invoked the challenged statutes, as explained in Argument A. The alternative grounds addressed in Argument C must also be evaluated against the facts known when Fenwick arrested him. *Devenpeck v. Alford*, 543 U.S. 146, 152–55 (2004). The immunity inquiry therefore concerns whether the officers reasonably relied on the asserted grounds for arrest despite the information available to them. *Hart v. Hillsdale County*, 973 F.3d 627, 641–42 (6th Cir. 2020).

Count II alleges federal malicious prosecution arising from unsupported charges and continued confinement under legal process. Before this encounter, the Supreme Court rejected the rule that probable cause for one charge categorically defeats a Fourth Amendment claim arising from another unsupported charge that caused detention. *Chiaverini v. City of Napoleon*, 602 U.S. 556, 561–65 (2024). As explained in Argument B, Franks alleges that Fenwick initiated a felony prosecution without facts supporting intentional or wanton damage and caused his continued confinement. A possible basis for arrest does not resolve whether the challenged prosecution reasonably rested on probable cause. *Hart v. Hillsdale County*, 973 F.3d 627, 642–43 (6th Cir. 2020).

Count I alleges First Amendment retaliation through arrest and criminal charges imposed for protected criticism. Its retaliatory-prosecution theory finds support in *Blackwell*, which affirmed denial of qualified immunity where officials pursued prosecution after criticism and the pleaded incidents obviously failed to establish the charged offense. *Blackwell v. Nocerini*, 123 F.4th 479, 489–92 (6th Cir. 2024). That obvious absence of probable cause permitted the claim to proceed without a factually analogous probable-cause decision. *Id.* at 491–92. Franks alleges that Fenwick responded to criticism with threatened arrest, sought charges to file, and pursued first-degree criminal mischief without facts supporting intentional or wanton damage. (Doc. 13, ¶¶ 49–80, PageID 119–21, ¶¶ 125–130, PageID 126–27). Those allegations support applying *Blackwell*'s obvious-violation reasoning to Count I's retaliatory-prosecution theory and denying qualified immunity at this stage. See *Blackwell v. Nocerini*, 123 F.4th 479, 491–92 (6th Cir. 2024).

**3. Consultation does not shield the officers from their own decisions.**

Officers cannot obtain qualified immunity simply by claiming that they followed another officer's instructions. *Hart v. Hillsdale County*, 973 F.3d 627, 641–42 (6th Cir. 2020). As explained in Arguments B and C, Fenwick arrested Franks and filed all four charges, including the three vehicle charges Lewis recommended after learning the device's characteristics. (Doc. 13, ¶¶ 136–142, PageID 128, ¶ 169, PageID 131). Sturgeon participated in the consultation about demanding identifying information under threat of arrest. (*Id.*, ¶¶ 170–173, PageID 131). These allegations identify the officers' direct contributions to the challenged decisions. (*Id.*, ¶¶ 136–142, PageID 128, ¶¶ 169–173, PageID 131). The Court must assess those decisions against what each officer knew,

including the facts undermining the proposed charges, rather than presume that consultation made the conduct reasonable. *Hart v. Hillsdale County*, 973 F.3d 627, 639–42 (6th Cir. 2020).

**F. Count VI plausibly alleges that Metro's deficient training and supervisory guidance caused Franks's injuries.**

Fenwick sought guidance through LMPD's chain of command, described the electric bicycle, received advice identifying three vehicle charges, and filed those charges. (Doc. 13, ¶¶ 197–220, PageID 134–36). Count VI identifies the instruction and safeguards that failed during that process and connects those failures to Franks's prosecution and confinement. (Id., ¶¶ 225–255, PageID 136–41, ¶¶ 284–298, PageID 144–45). Those allegations seek to hold Metro responsible for its own conduct under *Monell*, which permits municipal liability when a policy or custom causes a constitutional injury. *Monell v. Department of Social Services*, 436 U.S. 658, 691, 694 (1978).[4]

Under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), a municipality is liable for constitutional violations resulting from official policy or custom. The Sixth Circuit has recognized four ways a plaintiff can establish municipal liability:

> "A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Lipman v. Budish*, 974 F.3d 726, 746 (6th Cir. 2020).

[4] Counts I, II, and IV expressly base Metro's liability on the municipal failures alleged in Count VI, rather than any theory independent of *Monell*. (Doc. 13, ¶ 132, PageID 127, ¶ 153, PageID 129, ¶ 174, PageID 131). Fenwick's official-capacity designation is redundant and may be dismissed without affecting the direct claim against Metro. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).

**1. The complaint identifies specific training deficiencies and facts supporting them.**

A municipality may be held liable under § 1983 where its failure to train or supervise employees amounts to deliberate indifference to constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). A failure-to-train claim requires inadequate training for the assigned tasks, deliberate indifference, and a close causal connection between the deficiency and the constitutional injury. *Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019). A plaintiff can show deliberate indifference by pointing to a clear and persistent pattern of unconstitutional conduct by municipal employees, which can establish that the municipality had notice of deficiencies in training or supervision. *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 287 (6th Cir. 2020).

Municipal claims remain subject to ordinary pleading requirements, without a special heightened standard. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168–69 (1993). Concrete allegations can support an inference of deficient training even before a plaintiff obtains the municipality's training materials. *Byrum v. Knox County*, No. 25-5830, 2026 U.S. App. LEXIS 30845 at 13-14 (6th Cir. Oct. 8, 2026).

Metro characterizes the allegations as conclusions that fail to identify a training deficiency. (Doc. 6, PageID 41–43, incorporated by Doc. 23, PageID 195). But Count VI alleges inadequate training on determining whether a vehicle qualified as an autocycle before charging an autocycle offense. (Doc. 13, ¶ 225(a), PageID 136, ¶¶ 232–235, PageID 138). Officers also lacked adequate instruction on determining whether a vehicle required registration before charging a registration-plate violation. (*Id.*, ¶ 225(b), PageID 136, ¶ 237, PageID 139). Metro failed to adequately train officers to establish ownership of a

vehicle subject to mandatory insurance before charging an owner with failing to maintain coverage. (*Id.*, ¶ 225(c), PageID 137, ¶ 236, PageID 138).

The complaint further identifies inadequate instruction on distinguishing a traffic accident from intentional or wanton property damage before charging criminal mischief. (*Id.*, ¶ 225(d), PageID 137, ¶ 238, PageID 139). Metro also failed to adequately instruct officers and supervisors to assess probable cause for each proposed charge. (*Id.*, ¶ 225(f), PageID 137, ¶ 240, PageID 139). Finally, it failed to provide adequate training and safeguards against using arrest or additional charges to punish protected criticism. (*Id.*, ¶ 225(g), PageID 137, ¶ 241, PageID 139).

The supporting facts begin with Fenwick's admission that he had "literally never" encountered the situation and his requests for guidance about identification, arrest, and charges. (*Id.*, ¶¶ 197–207, PageID 134). He described an electric, folding bicycle to Lewis, received advice identifying three vehicle charges, and filed those charges. (*Id.*, ¶¶ 207–213, PageID 134–35). The complaint connects that advice to the failure to examine the statutory definitions and elements before selecting the charges. (*Id.*, ¶¶ 245–254, PageID 140).

That factual connection distinguishes *Wright*, where conclusory allegations failed to explain the training deficiency, deliberate indifference, or relationship to the injuries. *Wright v. Louisville Metro Government*, 144 F.4th 817, 827–28 (6th Cir. 2025). Here, the expressed uncertainty, information conveyed, supervisory advice, and resulting charges support an inference that the available training and guidance failed to prepare the participating personnel for their assigned tasks. (Doc. 13, ¶¶ 197–220, PageID 134–36, ¶¶ 245–255, PageID 140–41).

### 2. The alleged deficiencies concern recurring tasks with an obvious risk of constitutional injury.

Deliberate indifference ordinarily requires similar constitutional violations that put municipal policymakers on notice of deficient training, but a prior pattern is unnecessary when the need for training and the constitutional consequences of its absence are sufficiently obvious. *Connick v. Thompson*, 563 U.S. 51, 61–64 (2011). In *Ouza*, the Sixth Circuit held that evidence of inadequate training on probable cause and excessive force could support municipal liability without prior similar incidents because officers predictably confront those questions. *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 286–89 (6th Cir. 2020).

Metro routinely assigned officers to investigate collisions, classify vehicles, determine which statutes applied, and select criminal charges. (Doc. 13, ¶¶ 184–195, PageID 132–33). Those assignments required instruction on identifying the vehicles covered by a statute and the facts needed to support a charge before initiating a prosecution. (*Id.*, ¶¶ 230–240, PageID 138–39). Leaving officers unprepared for those decisions predictably exposed people to prosecution and confinement without probable cause.

Fenwick's request for guidance exposed the alleged failure because he admitted that the situation was unfamiliar and asked what charges he should use. (*Id.*, ¶¶ 197–207, PageID 134). He described an electric, folding bicycle, received advice identifying three vehicle charges, and filed those charges using provisions that included the autocycle statute. (*Id.*, ¶¶ 208–220, PageID 135–36). Adequate instruction on checking the statutory definition would have exposed the mismatch between that statute and a bicycle

lacking the required autocycle features. (*Id.*, ¶¶ 245–247, 253–254, PageID 140, ¶ 285, PageID 144).

The criminal-mischief charge shows another consequence of the same alleged training failure because Fenwick charged a felony arising from a collision without identifying facts supporting intentional or wanton damage. (*Id.*, ¶¶ 238, 244, PageID 139, ¶ 249, PageID 140). Instruction on that distinction would have required him to identify what made the accident criminal before filing the charge. (*Id.*, ¶¶ 288–292, PageID 144–45).

In *Byrum*, the combined failures of jail employees to respond to an obvious medical emergency supported a plausible inference of inadequate training. *Byrum v. Knox Cnty.*, No. 25-5830, 2026 U.S. App. LEXIS 30845, at *12–15 (6th Cir. Oct. 8, 2026). The obvious need to prepare employees for recurring medical emergencies, together with the predictable constitutional consequences of inadequate preparation, also supported deliberate indifference at the pleading stage. *Id.* at *16–18.

Metro assigned officers to investigate accidents and file criminal charges but failed to adequately train them to determine whether the facts supported those charges. (Doc. 13, ¶¶ 230–255, PageID 138–41). When Fenwick sought help, the supervisory guidance led to vehicle charges that included applying an autocycle statute to a two-wheeled bicycle. (*Id.*, ¶¶ 207–220, PageID 134–36, ¶¶ 245–247, PageID 140). Prosecuting and jailing people without probable cause was the predictable danger of leaving officers and their advisers unprepared for those decisions. (*Id.*, ¶¶ 253–255, PageID 140–41, ¶¶ 293–298, PageID 145). These allegations support deliberate indifference to an obvious training need, and the Court should deny dismissal of the failure-to-train claim.

### 3. Metro's training failures caused the challenged charges and resulting confinement.

A municipal training failure must be a moving force behind the constitutional injury. *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 404–05 (1997). As detailed above, Count VI connects the missing instruction to the charging advice Fenwick followed and alleges that adequate training would have prevented or corrected the unsupported charges. At the pleading stage, facts showing that inadequate training predictably produced the constitutional injury can support an inference of causation. *Byrum v. Knox Cnty.*, No. 25-5830, 2026 U.S. App. LEXIS 30845, at *18 (6th Cir. Oct. 8, 2026).

Metro argues that Fenwick's alleged deliberate retaliation could not have been prevented by better training. (Doc. 6, PageID 47–48, incorporated by Doc. 23, PageID 195). But alleging retaliatory conduct does not foreclose an alternative explanation that inadequate training produced the challenged enforcement decisions. *Byrum v. Knox Cnty.*, No. 25-5830, 2026 U.S. App. LEXIS 30845, at *18 n.4 (6th Cir. Oct. 8, 2026).

The complaint identifies how deficient training produced unsupported charges and how those charges caused confinement, sufficiently pleading causation to survive dismissal.

### 4. The consultations also implicate the alternative theory of delegated final policymaking authority.

A single decision can constitute municipal policy when made by an official possessing final policymaking authority over the challenged action, including authority delegated by an authorized policymaker. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–85 (1986). Ratification can occur when a final policymaker affirmatively approves the unconstitutional conduct or when the policymaker's failure to correct known

misconduct constitutes tacit approval. See *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). The Sixth Circuit recognizes that *Monell* liability attaches when a final policymaker endorses not just a subordinate's action but the reasoning behind it, because that approval transforms the decision into official city policy, and the law makes clear that this goes beyond mere acquiescence or isolated employee misconduct. *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993).

In *Pembaur*, officers confronted uncertainty, sought instructions, and followed a directive that bound the municipality because the official possessed the requisite authority. *Id.* at 484–85.

That is exactly what happened here. Lewis recommended the three vehicle charges, and Fenwick filed those charges. (Doc. 13, ¶¶ 207–213, PageID 134–35). Sturgeon participated with Lewis in the earlier consultation about demanding identifying information under threat of jail. (*Id.*, ¶¶ 202–204, PageID 134). Those consultations involved decisions about the arrest and charges before they occurred, rather than approval after the fact. (*Id.*, ¶¶ 202–216, PageID 134–35).

The sergeants' authority to advise Fenwick or approve individual enforcement decisions does not, by itself, make their instructions municipal policy. *Feliciano v. City of Cleveland*, 988 F.2d 649, 655–56 (6th Cir. 1993). But if Metro delegated final policymaking authority over the challenged decisions to either sergeant, an unconstitutional directive issued under that authority would be attributable to Metro. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–85 (1986).

### G. Franks states Kentucky claims for malicious prosecution and false imprisonment.

Count III asserts common law malicious prosecution against Fenwick and Lewis, while Count V asserts common law false arrest and false imprisonment against Fenwick individually. (Doc. 13, ¶¶ 155–160, PageID 130, ¶¶ 176–180, PageID 132).

#### 1. The sovereign-immunity argument addresses claims Franks has not asserted.

Defendants argue that Fenwick shares Metro's sovereign immunity when sued in his official capacity. (Doc. 22, PageID 183–84). But the complaint expressly limits the Kentucky claims against Fenwick to his individual capacity and likewise sues Lewis individually. (Doc. 13, ¶ 12, PageID 115, ¶ 16(i), PageID 116). Immunity attached to an official-capacity claim does not dispose of these individual-capacity claims. *Yanero v. Davis*, 65 S.W.3d 510, 521–23 (Ky. 2001).

#### 2. Count III states a Kentucky malicious-prosecution claim against Fenwick and Lewis.

Kentucky malicious prosecution requires initiation, continuation, or procurement of a proceeding without probable cause, malice, favorable termination, and resulting damages. *Martin v. O'Daniel*, 507 S.W.3d 1, 11–12 (Ky. 2016). Defendants principally dispute probable cause and favorable termination. (Doc. 22, PageID 184–85).

Arguments A and C explain why Franks challenges probable cause for the charges and the arrest itself.[5]As addressed in Argument B, Fenwick selected and filed the charges,

[5] *Hartman v. Thompson* treated probable cause for arrest as defeating Kentucky malicious prosecution, making the arrest grounds addressed in Argument C material to Count III. 931 F.3d 471, 485–86 & n.7 (6th Cir. 2019). Franks alternatively preserves the charge-specific approach applied in *Estep v. Combs*, which allowed Kentucky malicious prosecution to proceed on disputed charges despite probable cause supporting another offense. 467 F. Supp. 3d 476, 498–500 (E.D. Ky. 2020).

Lewis supplied the three vehicle charges, and the resulting prosecution subjected Franks to continued confinement under a cash bond he could not afford.

Kentucky also requires malice, meaning a purpose other than bringing an offender to justice. *Martin*, 507 S.W.3d at 11–12. The facts discussed in Argument D supply that improper purpose as to Fenwick because Franks challenged his demands, Fenwick escalated the encounter, and the complaint connects the resulting arrest and felony prosecution to punishment for that criticism. (Doc. 13, ¶¶ 56–80, PageID 120–21, ¶¶ 125–130, PageID 126–27).

Lewis's alleged role is narrower but direct because he participated in the identification-or-jail consultation and then supplied the vehicle charges after learning that Fenwick had encountered a folding electric bicycle or scooter. (Doc. 13, ¶ 16(b)–(h), PageID 115–16). Those allegations support Franks's claim that Lewis helped use unsupported charges to carry out the threatened confinement, rather than resting liability on Lewis's supervisory position or Fenwick's motive alone.

Defendants' favorable-termination argument rests on the absence of an acquittal or reversed conviction and the dismissal's designation as without prejudice. (Doc. 22, PageID 185). Neither establishes a categorical bar because a dismissal without prejudice can qualify when its circumstances reflect on the merits or the accused's innocence. *Davidson v. Castner-Knott Dry Goods Co.*, 202 S.W.3d 597, 603–06 (Ky. App. 2006).

Here, the Commonwealth produced no evidence supporting any charge, and the court dismissed all four charges at the October 3, 2025 preliminary hearing. (Doc. 13, ¶ 9, PageID 114, ¶¶ 91–93, PageID 122). Those facts support a reasonable inference that the prosecution ended because the Commonwealth could not substantiate the charges, not merely because of a procedural defect. (*Id.*). The words "without prejudice" do not

foreclose that inference. *Davidson*, 202 S.W.3d at 603–06. Defendants' assertion that the case remains active contradicts the pleaded dismissal of that same prosecution. (Doc. 22, PageID 185, Doc. 13, ¶ 82, ¶¶ 91–93, PageID 122).

#### 3. Count V states a Kentucky false-arrest and false-imprisonment claim against Fenwick.

False imprisonment is an unlawful restraint on a person's freedom to leave, imposed against his will, even for a brief period. *Banks v. Fritsch*, 39 S.W.3d 474, 478–79 (Ky. App. 2001). The confinement must be intentional, and the plaintiff must be aware of it. *Dunn v. Felty*, 226 S.W.3d 68, 71 (Ky. 2007). When an officer imposes that confinement through an arrest, the claim is commonly called false arrest. *Id.* Fenwick personally arrested Franks and intentionally confined him, and Franks knew he was confined. (Doc. 13, ¶ 169, PageID 131, ¶¶ 177–179, PageID 132).

The dispute is whether that confinement was lawful, because an officer's privilege to make an arrest defeats a false-imprisonment claim. *Dunn*, 226 S.W.3d at 71. Probable cause is a recognized basis for that privilege, and Defendants invoke it here. *Id.* Franks challenges that defense for the reasons explained in Arguments A and C and also alleges that Kentucky law did not authorize his custodial arrest. (Doc. 13, ¶ 178, PageID 132).

That statutory challenge addresses the same question of lawful confinement, because false imprisonment requires the absence of lawful authority to restrain the plaintiff. *SuperX Drugs of Kentucky, Inc. v. Rice*, 554 S.W.2d 903, 907 (Ky. App. 1977). Kentucky permits a warrantless felony arrest on probable cause, but ordinarily requires a misdemeanor to occur in the officer's presence unless an exception applies. KRS 431.005(1)(c)–(d) (2019). Thus, probable cause to believe that a misdemeanor occurred

outside an officer's presence does not, standing alone, authorize a warrantless arrest. *Maloney v. Commonwealth*, 489 S.W.3d 235, 238 (Ky. 2016).

If Defendants rely on an alternative traffic offense to justify Franks's confinement, they must establish that Kentucky law permitted custody for that offense under the circumstances.

## V. CONCLUSION

For these reasons, Franks respectfully requests that the Court deny both motions to dismiss (Docs. 22 and 23).

/s/ Robert L. Thompson
**Robert L. Thompson** (KY: 98791)
THOMPSON LEGAL LLC
1230 S Hurstbourne Pkwy, Suite 210
Louisville, Kentucky 40222
502-366-2121
Robert@RthompsonLegal.com

*Attorney for Plaintiff*

**Certificate of Service**

I hereby certify that on November 16, 2026, a true and correct copy of the foregoing was filed electronically with the Clerk of Court through the Court's CM/ECF system. Notice of this filing will be sent electronically to all counsel of record registered to receive electronic service through CM/ECF.

/s/ Robert L. Thompson
**Robert L. Thompson** (KY: 98791)